MRS. EDGAR GITTER, JR., Appellee, v.
TENNESSEE FARMERS MUTUAL
INSURANCE COMPANY, Appellant.
—450 S.W.2d 780

Western Section. September 9, 1969.

Certiorari Denied by Supreme Court February 16, 1970.

700

Don Owens, Memphis, for appellant.

Hall Crawford, Memphis, Harsh, Harsh & Crawford, Memphis, of counsel, for appellee.

MATHERNE, J. Complainant brought suit in Chancery to recover of defendant insurer the amounts recovered by third parties as judgments against complainant growing out of an automobile collision, and to recover collision loss to complainant's automobile. The defendant had issued to complainant its liability and collision coverage policy, but denied coverage on the ground that the policy was not in force due to non payment of premium.

The Chancellor heard the case on oral testimony without a jury. The Chancellor held there was coverage

under the policy and rendered judgment against the defendant insurer. The defendant has perfected its appeal to this Court.

The accident occurred on May 7, 1966. The policy held by the complainant was not introduced in evidence. However, neither party claimed that the policy contained a grace period. Premiums were payable semi-annually and it appears from the record that the payment of a premium extended this policy for an additional six months.

The questions in issue arise out of the wordage of a Final Notice of premium past due sent by the Company to the complainant, and the conduct of the parties in relation to the terms contained in this Notice.

The evidence establishes that the defendant sent to the policy holder a Semi-Annual Premium Notice. The complainant admits she received this notice several days prior to the due date, May 4, 1966. The complainant admits she did not pay the premium prior to or by May 4, 1966. This particular notice is on white paper with a green border. This notice shows on the face thereof the amount of premium due, the due date, expiration date of policy, name of policy holder, policy number and instructions to make payment to the home office of the company at P.O. Box 307, Columbia, Tennessee. This notice contains at the top left corner the following statement: "Failure to pay your premium on or before the date due automatically cancels your policy." The complainant's testimony establishes that she understood all provisions in this notice. Complainant had dealt with the Company under this type policy for ten years prior to the date of accident.

The evidence establishes that if the premium is not paid to the home office by the due date the company will within three or four days thereafter mail to the policy holder a Final Notice of premium due. The evidence establishes that this Final Notice of premium due was mailed by the company to the complainant, and that the complainant received it after the date of the accident, May 7, 1966.

This Final Notice of Premium due is on pink paper with a green border. It contains the amount of premium, due date, expiration date of policy, policy number, name and address of policy holder, and instruction to mail premium to the same home office address. This Final Notice states at the top left corner: "Your policy expired at 12:01 A.M. on Due Date." The Final Notice also states in a red marked box in the center of the Notice: "Payment within 15 days from due date will renew your policy and provide continuous protection." The testimony of the complainant reveals that she received this Final Notice several days prior to May 19, 1966. Complainant's testimony reveals that she understood the contents of this notice.

It is undisputed that on May 23, 1966 the complainant delivered to the branch office of the company at Memphis, Tennessee, her check of that date payable to the order of the company in the amount of the premium for the purpose of that office mailing it to the home office of the company. It is to be noted that this was four days after the expiration of 15 days after due date of premium.

The copy of the Semi-Annual Premium Notice retained by the company was stamped "Lapsed 15 days after due date." The testimony of the company official was that

this entry is made on the company's copy of the Notice immediately upon the lapse of 15 days without exception, and no extension of that policy is ever made by the company. Upon receipt of complainant's check the company issued to her a new policy for the term from May 24, 1966 to November 24, 1966 and mailed this policy to the complainant. By letter dated May 26, 1966 from the company's claim supervisor the complainant was informed that she did not have coverage on the date of the accident, May 7, 1966, because she failed to pay premium due within the 15 days after due date.

Immediately after the accident the company's adjuster contacted the complainant and proceeded with a normal investigation of the accident. According to complainant this adjuster told her: "I will fill out my forms and I will do whatever is right. I will follow it up, and all." Complainant testified the adjuster also said to her: "Don't worry about it; it will be taken care of." This investigation resulted in the adjuster having complainant sign a Release and Subrogation Receipt by which complainant accepted $186.72 in settlement of her collision loss, however, no payment was made to complainant under the instrument which is dated May 23, 1966.

The Chancellor held the fifteen day period from May 4, 1966, date premium was due, during which the complainant could pay premium and have continuous coverage did not amount to a grace period in the sense that a loss suffered during that period would be covered whether the premium was paid or not. The Chancellor held this continuous coverage was contingent upon the payment of the premium within the fifteen days, and a failure to pay as required would result in a termination

of the policy as of May 4, 1966. We agree with the Chancellor in this holding.

The Chancellor held that the company by the conduct of its agents and representatives is estopped to deny that the policy was in effect on the date of the accident. In this respect the Chancellor stated "* * * However, the Court feels that the action of the Defendant in this case, treating the insured for a period of some twenty days as if she were insured and making an investigation of the accident and accepting the payment and forwarding it to the Home Office, that this would work an estoppel; I feel this does work an estoppel."

█ The essential elements of an equitable estoppel as related to the party claiming the estoppel, are, (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially. Provident Washington Ins. Co. v. Reese (1963), 213 Tenn. 355, 373 S.W.2d 613.

The facts establish that the complainant had a full understanding of the import of the fifteen days during which she could pay premium and thereby have continuous coverage. She was asked and she explained what "continuous coverage" meant to her and her explanation shows sufficient understanding on her part. Therefore, there was no lack of knowledge on the part of the complainant concerning the effect failure to pay the premium within the fifteen days would have on her coverage.

It is true the defendant's adjuster started an immediate investigation of the accident. It is undisputed that he made statements to the complainant as herein set out.

However, the crux of the issue on equitable estoppel is whether the complainant relied on these statements and this conduct and thereby changed her position prejudicially. We do not find such reliance and change of position in the record. The complainant was asked on direct and cross examination at four different times to answer, why she did not make the premium payment when due or within the fifteen days. One answer was: "At the time, the accident happened, and all the suing and stuff come in on me and everything and it was too much." To the same question she replied: "I thought I had paid it, but since the accident came up and the thing happened like it did, working and all, it slipped my mind but I didn't intentionally do it." Again she answered: "The only thing, as I said, I thought I had paid it." * * * "Possibly, I was running low of money that weekend and was going to pay it the next one. Sometimes it happens to me that way."

Complainant's longest statement in this regard was on cross-examination as follows:—

"Q. Now will you tell the Court again why you did not pay the premium prior to the due date, having received that notice?

A. Because, as I said, I overlooked it, because of the accident and things that happened. It was unintentionally. I didn't mean to do it on purpose. I try to keep my bills paid. I have too many others that I try to keep up, and the only thing I know could have happened is because of the things involved during the wreck and all of that, and I didn't do it on purpose. I went ahead and paid it and they accepted it and done everything,

went on through with it, and there wasn't no more questions about it except they wasn't able to take care of this accident that occurred. That is all I am asking for. My policy was still good. The membership goes from year to year, from June or July, whatever date they have us to pay it in, to be a member.''

■ A preponderance of the evidence clearly establishes that the complainant did not rely on any statement or conduct of defendant's agents and adjusters and thereby decide not to pay the premium. There was no reliance and action thereon to complainant's prejudice. Action and prejudice are essential to equitable estoppel. Provident Washington Ins. Co. v. Reese, supra; Gibson's Suits in Chancery, 5th Ed., 1955, Sec. 77.

Having determined that the policy terminated upon complainant's failure to pay the premium within the fifteen day period after premium was due, and having determined that the company is not estopped to rely on this failure to pay premium because of conduct or statements of its agents, the next question is whether under the facts the company then waived the forfeiture of the policy by its acceptance of the premium money and the issuance of a new policy.

■ We hold that the acceptance of the premium money along with the notice of premium due by the company's branch office at Memphis did not constitute a waiver of the forfeiture due to non payment of premium. This is so because the complainant testified that she understood the premium was to be mailed to the home office. In this respect she stated: ''They just mail it on in. It still has to go to the home office, but they accepted

it." She understood that the branch office did not stamp the notice "paid", nor did they give her a receipt for the money. The fact that she stated "* * * but they accepted it," could not be deemed an understanding on her part that the forfeiture due to nonpayment of premium had been waived because she understood the payment had to be to the home office, and she admitted the branch office accepted the payment and mailed it in as an accommodation to her and not otherwise.

■ The action taken by the home office of the company when it received this premium notice and the check in payment thereof raises another question. In this case the loss had occurred and the defendant company under the facts is charged with notice thereof at the time it received complainant's check in payment of past due premium with the notice of premium due.

A waiver is an intentional relinquishment of a known right. Baird v. Fidelity-Phenix Fire Ins. Co. (1942), 178 Tenn. 653, 162 S.W.2d 384, 388, 140 A.L.R. 1226; State ex rel. Lea v. Brown (1933), 166 Tenn. 669, 64 S.W.2d 841, 848, 91 A.L.R. 1246. Waiver is a doctrine of very broad and general application. It concedes a right, but assumes a voluntary relinquishment of it. State ex rel. Lea v. Brown, supra. Our courts have held that there must be clear, unequivocal and decisive acts of the party or an act which shows determination not to have the benefit intended in order to constitute a waiver. Webb v. Board of Trustees of Webb School (1954), 38 Tenn.App. 173, 271 S.W.2d 6, and cases therein cited.

■ The facts in the case at bar fail to reveal on the part of the company any act which meets the above definitions and explanation of a strict waiver. Concede that

the company had no right to accept complainant's check under the circumstances and issue a new policy, we cannot hold the act of accepting the check and issuing the new policy waived its right to declare the old policy forfeited due to nonpayment of premium. These acts to the contrary, in and of themselves, asserted the right to declare forfeiture. We hold the facts fail to establish a strict waiver.

We must now consider if the conduct of the company constituted an implied waiver. Here we become involved with the doctrine of estoppel. Our courts have held there is a distinction between waiver and estoppel. In Baird v. Fidelity-Phenix Fire Ins. Co., supra, the distinction was stated to be: "A waiver is an intentional relinquishment of a known right. An estoppel * * * can be maintained only on the ground that, by the fault of one party, another has been induced * * * to change his position for the worse, in such a manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy."

It appears from the texts and cases that implied waiver partakes of what is referred to as waiver by estoppel. Our cases have recognized the difference between a strict waiver and an implied waiver. In Baird v. Fidelity-Phenix Ins. Co., supra, the Court quoted from Bigelow on Estoppel, 6th Ed. p. 728: "That kind of waiver which consists merely in renouncing some right, * * * is, certainly, no estoppel, though it has been called such * * * the kind of waiver capable of being described as an estoppel should have the marks of an estoppel, by causing the innocent party to *forego some right or otherwise to*

*change his position.* Other waivers are more properly cases of election." (Emphasis added.)

Also in the case of National Life and Accident Ins. Co. v. Varner (1937), 171 Tenn. 95, 100 S.W.2d 662, the Court had before it the question of an implied waiver as related to the indorser of a negotiable instrument. The Court distinguished an implied waiver as follows: "To constitute an implied waiver of notice of dishonor of a negotiable instrument by an indorser, *his acts must warrant the holder in not taking steps* necessary to charge the indorser." (Emphasis added.)

■ It therefore appears that whether we call it "implied waiver" or "waiver by estoppel" our Supreme Court has established the necessity of proving in such a case the elements of estoppel. The party insisting on the implied waiver must show that there was a prejudicial change of position on his part based upon the conduct of the defendant. It appears this element of estoppel must be shown in cases of implied waiver before the court is justified in holding that from the conduct of the defendant there can be implied an "intentional relinquishment of a known right."

■ In the case at bar there was no proof of any reliance by the complainant on the act of the company in accepting her check and the issuance of a new policy. This complainant knew the policy was not in force when she forwarded the check and premium notice to the company. This complainant knew the receipt by the company of this check would not afford coverage for the May 7, 1966 accident by the terms of every statement she had received from the company. The proof establishes this complainant understood all of this. The only in-

ference which can be reached from the act of complainant in delivering the check and premium notice to the company's branch office in Memphis is that she attempted to thereby induce the defendant to waive the forfeiture for nonpayment of premium by its acceptance of the check. We do not believe implied waiver can rest on these facts. This complainant cannot be heard in equity to say she understood the terms by which she could have effected continuous coverage, not comply therewith, have the premium mailed in for her, and then contend the defendant has impliedly waived its right to insist on the forfeiture by the issuance of the new policy.

This holding is not to be construed as relieving an insurance company of its obligation by the mere issuance of a new policy. If the facts in this case had established that the complainant did act to her prejudice at any time in reliance on the statements and conduct of the company's agents and adjusters that action would clearly relate over to the issuance of the new policy and could amount to at least an implied waiver by the company.

There is no proof of any act or change of position by the complainant to her prejudice based upon any act of the company or its agents in the investigation of the claim, the mailing of the check, the acceptance of the check and issuance of the new policy, or otherwise. Therefore the essential elements of an implied waiver are lacking and the complainant cannot recover on this ground.

It results that defendant's Assignments of Error are sustained. The decree of the Chancellor is reversed and this cause is dismissed at the cost of the complainant.

Carney and Taylor, JJ., concur.