**Green Mountain Insurance Company v. Maine Bonding & Casualty Co., Carol Carter, Alan Buck, Judye Cheney, Individually and as Next Best Friend of Sheena Cheney Buck and Gregory Hammond**

[608 A.2d 1160]

No. 91-113

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 20, 1992

*Bruce C. Palmer* of *Downs Rachlin & Martin*, St. Johnsbury, for Plaintiff-Appellant.

*Allan R. Keyes* and *John A. Serafino* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee.

**Johnson, J.** This is a declaratory judgment action to establish which insurance carrier is primarily liable for damages resulting from an automobile accident. Plaintiff Green Mountain Insurance Company (Green Mountain) appeals from an order of the Orleans Superior Court granting summary judgment to defendant Maine Bonding & Casualty Company (Maine Bonding). Maine Bonding had insured a vehicle involved in a collision with a car insured by Green Mountain, but claimed that its policy had been cancelled. We affirm.

On October 4, 1987, Gregory Hammond was driving a car lent to him by its owner, Carol Carter, when it collided with a car driven by Alan Buck. Hammond was insured by Green Mountain, and the Carter vehicle carried the policy that Maine Bonding claims was cancelled. Each policy provided that its coverage was primary with respect to the policy owner's vehicle and excess with regard to nonowned vehicles, with the result that the Maine Bonding policy would afford primary coverage if it were in effect. The Maine Bonding policy had initially covered a 1976 Ford Pinto, but in March 1987 Carter notified Maine Bonding that she was substituting a 1985 Ford Escort for the Pinto. Prior to learning of the change in cars, Maine Bonding issued declarations of coverage for the period April 7 to October 7,

1987, and on March 16, 1987, sent a bill for $81 for the renewal, with a minimum payment due of $27. The due date for payment was April 8, 1987. Carter received the bill.

On March 23, 1987, Maine Bonding issued Carter two amended declarations with respect to her new car, one covering the initial policy period from October 7, 1986 to April 7, 1987, and the second covering the renewal period from April 7 to October 7, 1987. The first amended declaration reflected a "full term total premium" of $237 and stated at the bottom of the document, "Above amendments identified by * developed a premium of $24.00." The second amended declaration also stated a "full term total premium" of $237 and indicated at the bottom of the document that the amendments identified "developed a premium of $156.00."

By check dated April 3, 1987, Carter paid Maine Bonding $27, apparently in response to the March 16, 1987 bill. Maine Bonding received and negotiated the payment on April 6, 1987, applying $24 of the $27 toward the additional premium due for the new car for the remainder of the initial term, i.e., from March 10, 1987 through April 7, 1987, and applying the balance of $3 to the renewal period.

On April 6, 1987, Maine Bonding rebilled Carter for $24, the difference between the minimum due for the renewal period ($27) and the $3 credit remaining from the check received from Carter on April 6, 1987. Receiving no further payment thereafter, Maine Bonding on April 20, 1987 mailed the following notice to Carter:

> YOUR PREMIUM PAYMENT DUE APRIL 08, 1987 HAS NOT BEEN RECEIVED. YOU HAVE AN OPPORTUNITY TO KEEP YOUR POLICY IN FORCE IF THE MINIMUM DUE OF $24.00 IS RECEIVED BEFORE THE CANCELLATION OF MAY 05, 1987. SEND PAYMENT TO P.O. BOX 226, PORTLAND, MAINE 04112. IF YOU HAVE ALREADY MAILED YOUR PAYMENT, PLEASE DISREGARD THIS NOTICE.

Carter testified in deposition with respect to this notice that "I threw it away, because I'd already paid it." The reason for her impression that she had paid the bill was the similarity of the $27 she had paid and the $24 billed.

Nearly five months later, Carter's Ford Escort was involved in the collision that resulted in the present action.

Both Green Mountain and Maine Bonding filed motions for summary judgment. Green Mountain stated that "the essential facts of this case are undisputed" and argued that Maine Bonding could not establish an effective cancellation as a matter of law because its notices to Carter were ambiguous. Maine Bonding's motion also asserted that there were no material facts at issue and argued that its policy had been effectively cancelled as a matter of law. The trial court ruled that Green Mountain had not met its burden of demonstrating that the cancellation notice was ambiguous, finding, on the contrary, that "the surrounding circumstances verify that the cancellation notice was an accurate integration of the bills sent by Maine Bonding and the payment received from Ms. Carter." The court stressed that Carter should have been aware that her new car would require an additional premium and that she made no inquiry of the company after receiving a cancellation notice. The court concluded that retention of the $3 toward payment of the renewal period premium did not estop Maine Bonding from relying on the cancellation notice.

## I. Standing

Maine Bonding argues that Green Mountain has no standing to assert that its policy was not validly terminated for nonpayment of the premium. Maine Bonding contends that the present issue is "personal to Carter and Maine Bonding." We disagree. That Carter has a significant interest in the issue cannot be disputed, because her vehicle was involved; but so does Green Mountain, for if the Maine Bonding policy was in force on the date of the accident, then Maine Bonding was the primary carrier, and Green Mountain the excess carrier. It is hard to think of a question that would bear more on both Green Mountain's and Maine Bonding's respective interests in the underlying litigation, and the declaratory judgment action is designed to raise and resolve such issues. 12 V.S.A. § 4722 (purpose of the declaratory judgment is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations and it is to be liberally construed and administered").

■ Maine Bonding cites no cases in which standing has been denied in a suit between insurance companies over the validity of, or the meaning of a term or clause within, one of the company's policies. Declaratory judgment actions involving such issues are legion. See, e.g., *Concord General Mut. Ins. Co. v. Home Indem. Co.*, 368 A.2d 596, 597 (Me. 1977); *Motor Club of America Ins. Co. v. All American Rental, Inc.*, 14 Mass. App. 1031, 442 N.E.2d 739 (1982); *Lumbermens Mut. Casualty Co. v. Progressive Casualty Ins. Co.*, 168 A.D.2d 708, 563 N.Y.S.2d 566 (1990). We therefore conclude that Green Mountain Insurance Company had standing to assert that its policy was not validly terminated for nonpayment of premium.

## II. Cancellation of the Carter Policy

Green Mountain argues that Maine Bonding did not effectively cancel the policy with the insured because its billing and crediting procedures created ambiguity in the notice of cancellation. As we stated in *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988): "Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." Thus, for example, a purported notice of cancellation can fail to include the word "cancellation" and hence not deliver its primary message with sufficient clarity. *Travelers Ins. Co. v. Hendrickson*, 1 Conn. App. 409, 413, 472 A.2d 356, 358 (1984). Or a cancellation notice plain on its face can fail to be explicit and unequivocal under unusual circumstances. *Caduff v. Universal Underwriters Ins. Co.*, 381 N.W.2d 9, 12 (Minn. Ct. App. 1986).

In the present case, Green Mountain does not argue that the cancellation notice itself was ambiguous, but rather that in the context of surrounding events, its message could not be adequately deciphered. We disagree. Carter notified Maine Bonding of a change in the covered vehicle at or near the time when she was renewing her policy with Maine Bonding. Because she gave notice of her new car during the initial coverage period, she incurred an additional premium for that period and should have expected to do so. Although the March 16, 1987 bill arrived before Maine Bonding had processed her request regarding the

new car, the premium bill specifically referred to the old car, "1 76 Ford Pinto." The declarations she received a week later, on March 23, 1987, referred to the new car and a new premium. Therefore, she could not reasonably conclude that her obligation to pay her insurance premium was satisfied when she paid the March 16 bill, which referred to her old car.

Maine Bonding received the $27 payment on April 6, 1987, *after* it had processed Carter's request to change the covered vehicle and *after* the company sent the March 23, 1987 declaration stating that an additional $24 would be due by subsequent billing for the initial coverage period on account of the new car.* Although Green Mountain contends that Maine Bonding "credited payments out of sequence" when it applied the $27 first to the initial premium period and then to the renewal period, that procedure was proper, even though the due date for the initial premium surcharge was later than the due date for the renewal premium. Maine Bonding's crediting procedure prevented a current policy from lapsing, after Carter initiated a change in vehicles. Carter received notice that her vehicle change would result in premium increases for the initial coverage period as well as the renewal period. She was also on notice that the $27 she paid was sufficient only for the minimum renewal payment for her 1976 Pinto and could not have been sufficient to insure her new vehicle because she had received two declarations from Maine Bonding stating that her premiums for the initial and renewal periods would be increased. She ignored what Maine Bonding's notices stated because the $27 she paid was similar to the $24 she was later billed. Finally, when she received notice that Maine Bonding was about to cancel her policy, she made no inquiry whatever.

---

* The trial court's decision is unclear on whether Maine Bonding ever sent a separate bill for the extra $24 due for the initial coverage period. In her direct deposition testimony, Carter stated that she had received and had disregarded a $24 bill, since she believed she had paid it. On cross-examination, she was equivocal as to whether the document she remembered was a bill or a declaration of coverage. On appeal, Green Mountain concedes that she received either a bill or a declaration stating that $24 was due on account of the initial period, and the declaration in evidence makes clear that the $24 was an additional premium due because of the substitution of vehicles.

The facts of the present case are far different from those in the cases relied on by Green Mountain. In *Caduff v. Universal Underwriters Insurance Co.*, 381 N.W.2d at 11, the termination notice was followed five days later by a new declaration sheet amending the policy to provide coverage, and stating in the space for "Return or additional premium" the amount of "$.00." In *Automobile Club Insurance Co. v. Donovan*, 550 A.2d 622 (R.I. 1988), the insurer billed the insureds for a premium to cover their son as an additional insured, and received notice that March 24, 1983 was both the "due date" and the "expiration date," without stating whether the entire policy or just the added coverage would expire on that date. The court held that the purported cancellation did not meet state regulatory requirements. *Id.* at 624. In *Fifty States Management Corp. v. Public Service Mutual Insurance Co.*, 67 Misc. 2d 778, 784, 324 N.Y.S.2d 345, 353 (Sup. Ct. 1971), the insurer neglected to send each of two insureds one of two cancellation notices, and the court concluded therefore that the notice procedure failed to meet state statutory standards.

■ In sum, Carter received a cancellation notice that followed a series of communications from Maine Bonding, each one of which was proper and correct. Carter knew that she had not paid an increased premium for her new car despite two notices declaring increases, and she did not inquire about a notice of cancellation. She had an opportunity to avoid the negative consequences of confusion inherent in the subject transactions and did not act. Therefore, the policy was not in effect at the time of the accident.

### III. Waiver and Estoppel

■ Green Mountain argues that when Maine Bonding credited $3 to the payment of Carter's renewal premium, it retained an unearned premium for an unreasonable length of time and this waived Maine Bonding's right to cancel the policy, or that Maine Bonding was estopped from cancelling it. We do not agree. Here, the notice of cancellation itself was definite and unequivocal—it was without facial ambiguities that rendered its message unclear. Because a waiver is the *voluntary* relinquishment of a known right, *Segalla v. United States Fire Ins. Co.*, 135 Vt. 185, 189, 373 A.2d 535, 538 (1977), Green Mountain

is arguing in effect that by failing to return the unearned premium payment promptly, Maine Bonding expressed its intention to revoke the cancellation notice and to reinstate Carter's lapsed policy. But Green Mountain offers no theory, based either on the policy or Vermont law, from which such a waiver could be inferred. Green Mountain concedes that the refund of an unearned premium is not specified in the policy as an explicit condition for cancellation, but relies on the holdings of some courts that retention of a premium *may* be evidence of waiver where an insurer specifically undertakes to effect return and does not do so within a reasonable time. See, e.g., *Riverside Ins. Co. of America v. Parker*, 237 Ark. 594, 597–98, 375 S.W.2d 225, 227-28 (1964). In *Riverside*, a divided court held that the failure of an insurer's undertaking to return an unearned premium "as soon as practicable" nullified a prior policy cancellation. *Id.* at 598, 375 S.W.2d at 228. Green Mountain argues that Maine Bonding's policy contained language similar to that in *Riverside*, specifically a statement in an amendment to Part F of defendant's policy reciting "Other Termination Provisions":

> 2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. *However, making or offering to make the refund is not a condition of cancellation.* (Emphasis added.)

In addition, the actual cancellation notice contained the language "Premium adjustment, if any, will be made after cancellation is effective." Neither of these excerpts provides a basis for concluding that failure to repay the $3 should result in voiding the cancellation notice. The Maine Bonding insurance contract explicitly stated that the offer to make the refund was not a condition of cancellation.

In response, Green Mountain points out that the *Riverside* majority held that failure to return the unearned premium in accordance with the policy in that case nullified the cancellation notice, despite language in the policy that "payment or tender of unearned premium is not a condition of cancellation." *Riverside* is, nevertheless, unpersuasive here. First, the language in Maine Bonding's policy stating that unearned premiums shall be returned does not contain language promising a

prompt return and is distinguishable from that in *Riverside*. But more importantly, where the insured does not raise the issue of reliance on return of the unearned premium, and no statutory or regulatory command requires prompt return in order to maintain a cancellation, there is no reason not to honor the clear language of the policy warning policyholders that cancellation is not conditioned on return of unearned premiums. As the court stated in *Marchessault v. National Grange Mutual Liability Co.*, 229 F.2d 698, 701 (2d Cir. 1956):

> In the absence of a statute on the subject, and no such Vermont statute has been called to our attention, the parties were at liberty to determine by contract the conditions upon which cancellation might be had. Cases involving cancellation provisions identical or similar to those of the policy here in suit are almost unanimous in holding that return of the unearned premium is neither a condition precedent nor a condition subsequent to effective cancellation, and that the insurer's obligation to return the premium is only a contractual duty arising in consequence of the cancellation.

See also *Riverside*, 237 Ark. at 599, 375 S.W.2d at 229 (Ward, J., dissenting) (policy cancelled when notice received and insurance company's failure to return premium only created a debtor/creditor relationship between parties); *Osborne v. Atlas Assurance Co.*, 61 Tenn. App. 618, 631, 457 S.W.2d 364, 370 (1969)(insurance company's failure to return premium within reasonable time did not negate cancellation). Although a contractual undertaking by an insurer or a Vermont statute could condition cancellation on its timely return of unearned premiums, neither condition applies in this case, and no case for waiver has been made.

Green Mountain's estoppel argument with respect to the retention of the unearned premium also fails, since there is no genuine issue of fact concerning Carter's reliance on the failure to return the $3 following cancellation of the policy. Green Mountain's argument is that return of the unearned premium might have given Carter another chance to consider that the policy had been truly cancelled. This argument is not based on

estoppel, but rather public policy—that it would be salutary for insurers to be required to return unearned premiums promptly as conditions subsequent to the issuance of cancellation notices. In the absence of language in the insurance contract that invites reliance, we leave such concerns to the Legislature.

### IV. Suitability for Summary Judgment

Green Mountain contends that Maine Bonding's summary judgment motion should not have been granted because genuine issues of fact remained that were unsuitable for disposition under V.R.C.P. 56. Although some factual issues may have been presented, none was material. For example, Green Mountain cites uncertainty over receipt of certain bills from Maine Bonding, most notably the bill for the $24 due on the renewal premium, after Carter made her $27 payment, $24 of which was credited to her increased premium for the initial period. But Carter did receive declarations clearly indicating the sums that would be due on both the initial and renewal periods, and she never denied that she was notified that $24 was due prior to termination. Her claim was that the $24 amount was similar to the $27 that she recalled paying. But if Maine Bonding's declarations and bills were clear and accurate as to amounts due for the initial and renewal periods, appropriate adjustments for Carter's new automobile, and credits for amounts that she paid, as we have held they were, Carter's mistaken recollection could not give rise to a genuine issue of material fact. The question whether Maine Bonding's retention of the $3 unearned premium was waiver of the earlier cancellation was similarly an issue of law. The matter was ripe for summary judgment.

*Affirmed.*

**Allen, C.J.,** concurring. I concur in the result but decline to join the majority in Part I of the opinion as I do not believe it addresses the arguments raised by the defendant.