2006 VT 1

# Deborah Anderson v. Cooperative Insurance Companies

[895 A.2d 155]

No. 04-445

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.),
Specially Assigned

Opinion Filed January 13, 2006

*Kevin E. Brown* and *Clara F. Gimenez* of *Langrock Sperry & Wool, LLP*, Middlebury, for Plaintiff-Appellant.

*Joan W. D. Donahue* and *Richard P. Foote* of *Conley & Foote*, Middlebury, for Defendant-Appellee.

¶ 1. **Skoglund, J.** Plaintiff Deborah Anderson appeals from the Addison Superior Court's denial of her summary judgment motion and grant of summary judgment in favor of defendant. She argues that defendant must cover a loss that occurred after her automobile insurance policy had expired because defendant was aware of the loss when it extended her an offer, retroactive to the expiration date, to reinstate the policy. Thus, she reasons, the superior court erred in granting summary judgment for defendant. Defendant argues that there is no coverage for plaintiff's claim because the loss occurred after the auto policy had expired, and defendant had unequivocally denied the claim at issue and never retracted that denial. We affirm.

¶ 2. The facts are not in dispute. Plaintiff was covered by an automobile liability policy issued by defendant. Despite receiving a renewal notice from defendant approximately one month before the policy expiration date, plaintiff failed to pay her renewal premium on time. As a result, the policy expired on August 13, 2003. Three days later, on August 16, plaintiff's car sustained substantial damage in an accident. Plaintiff reported the accident to her insurance agent on August 18, and later that day the agent informed plaintiff that defendant was denying coverage for the August 16 accident because the policy had expired on August 13.

¶ 3. Next, plaintiff received a "Final Notice" generated by defendant's computer system and dated August 18, 2003. The notice informed plaintiff that her policy had expired on August 13 and that she could reinstate the policy "back to 8/13/2003" if she paid her premium by August 31. Plaintiff mailed the renewal form with the premium to defendant. On or about August 25, defendant received plaintiff's acceptance of its offer to reinstate coverage, along with the requested premium. Defendant then sent an "Acknowledgment of Late Payment," dated August 25, stating that it received the premium payment and that "coverage has been reinstated and remains in force without interruption."

¶ 4. On August 27, plaintiff resubmitted her claim for coverage of her losses resulting from the August 16 accident. By letter dated August 29, defendant informed plaintiff that the reinstatement of her policy did not provide coverage for the August 16 accident. The letter explained that her policy only covered unknown losses, and that "[t]here was no longer an insurable risk" once she had the accident during the time she was uninsured. The letter also pointed out that plaintiff was advised on

August 18 that defendant was denying coverage for the loss. Defendant never retracted its denial of coverage, nor did it or any of its agents ever tell plaintiff that it intended to cover her claims stemming from the August 16 accident.

¶ 5. Plaintiff sued, alleging that defendant wrongfully refused to provide coverage. Both parties filed motions for summary judgment. In an order dated September 3, 2004, the trial court denied plaintiff's summary judgment motion and granted defendant's because the reinstatement "did not cover her for a claim *that had already been reported and denied.*" The court noted that "[w]hile an insurer may agree to cover a loss already known to it, there must be an *intent* to offer such coverage" and concluded there was no evidence of such an intent on the part of defendant. This appeal followed.

¶ 6. On appeal, this Court reviews a motion for summary judgment de novo, employing the same standard as applied by the trial court. *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82. To prevail on a motion for summary judgment, the moving party must show there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Where a genuine issue of material fact exists, summary judgment may not serve as a substitute for a determination on the merits. *Human Rights Comm'n v. Benevolent & Protective Order of Elks*, 2003 VT 104, ¶ 11, 176 Vt. 125, 839 A.2d 576.

¶ 7. It is undisputed that, at the time of the accident, plaintiff's policy of automobile insurance had expired. It is also undisputed that, when plaintiff filed a claim for the August 16 accident, she was informed that her claim was denied because no contract of insurance was in existence between plaintiff and defendant. The issue in this case arises from the wording of the Final Notice, generated by defendant on August 18, and the conduct and expectations of the parties in relation to both the terms contained in the Final Notice and any subsequent extension of insurance coverage.

■ ¶ 8. We hold that, as a matter of law, plaintiff cannot demonstrate that defendant was required to cover the August 16 accident by virtue of its offer to reinstate her policy and her acceptance of that offer. This conclusion flows from defendant's explicit denial of coverage *before* plaintiff received and accepted defendant's offer to reinstate the policy, which shows that defendant properly exercised, and did not, as plaintiff contends, waive its right to deny coverage under the expired policy.

¶ 9. Plaintiff argues that defendant could have withdrawn or amended its offer to reinstate coverage to exclude any claims of which it had knowledge and which had occurred during the lapse period. She notes, correctly, that coverage exclusions must be specific and unambiguously expressed in the policy, and any uncertainty in this regard must be resolved in favor of the insured. *Am. Fid. Co. v. Elkins*, 125 Vt. 313, 315, 215 A.2d 516, 518 (1965). She claims defendant extended an unconditional offer of retroactive coverage back to August 13, 2003, which plaintiff accepted. Thus, she reasons, its decision not to limit its offer evinces its intent to cover the August 16 accident. In effect, plaintiff argues that we should find an implied waiver of defendant's right to deny the claim in the offer to renew.

¶ 10. A waiver is a voluntary relinquishment of a known right, *Green Mountain Ins. Co. v. Maine Bonding & Cas. Co.*, 158 Vt. 200, 206, 608 A.2d 1160, 1165 (1992), and can be express or implied. *Holden & Martin Lumber Co. v. Stuart*, 118 Vt. 286, 289, 108 A.2d 387, 389 (1954). As to express waiver, the undisputed facts show that defendant, in its offer to reinstate the policy, did not expressly waive its right to deny coverage for the August 16 accident by rescinding its previous denial.

¶ 11. In assessing a claim of implied waiver, "caution must be exercised both in proof and application." *Id.* To succeed on an implied waiver theory, plaintiff must show "some act or conduct on the part of defendant[] that was unequivocal in character." *West River Power Co. v. Bussino*, 111 Vt. 137, 139, 11 A.2d 263, 264 (1940). As other jurisdictions have recognized, implied waiver blurs the line between the doctrines of waiver and estoppel. See, e.g., *Brown v. Taylor*, 901 P.2d 720, 723 (N.M. 1995) ("Waiver implied from a course of conduct may be termed a waiver by estoppel."); *Gitter v. Tenn. Farmers Mut. Ins. Co.*, 450 S.W.2d 780, 784 (Tenn. Ct. App. 1969) ("[I]mplied waiver partakes of what is referred to as waiver by estoppel."). Thus, to prove implied waiver, a plaintiff must show that she honestly and reasonably believed, based on the defendant's conduct, that the defendant would forego asserting some right to which it was otherwise entitled, and that the plaintiff acted to her detriment in reliance on that belief. *Brown*, 901 P.2d at 723-24; *Gitter*, 450 S.W.2d at 785.

¶ 12. We find no implied waiver in this case. At best, from plaintiff's perspective, defendant's conduct was equivocal, because, on the one hand, it flatly denied coverage for the accident and, on the other, sent a reinstatement offer that did not reference the denied claim. Further-

more, plaintiff had no basis for a reasonable, honest belief that defendant intended to forego its right to deny coverage. In fact, plaintiff knew that defendant had already exercised its right to deny her claim because her policy had expired. Although defendant's offer to reinstate the policy, upon payment of the premium, did not reiterate that denial, the offer to reinstate did not reflect any intention to reverse that decision. Moreover, plaintiff can point to no detrimental change in her position occasioned by defendant's conduct. Thus, plaintiff cannot demonstrate an implied waiver by defendant.

¶ 13. In this regard, the instant case closely resembles *Gitter*. There, the plaintiff testified that she received a notice from the defendant insurance company indicating that her automobile insurance would expire on May 4 if she failed to pay the premium by that date. Without having paid the premium, her car was damaged in an accident on May 7. Sometime after the accident, she received a "Final Notice" from the defendant, stating that if she paid the premium within fifteen days of the May 4 due date her coverage would be reinstated without interruption. On May 23, more than fifteen days after the due date, but before the defendant had denied coverage, she tendered payment to the defendant, and defendant issued her a policy commencing May 24. On May 26, the defendant informed the plaintiff that she did not have coverage on the date of the accident. The court's words, in holding that the plaintiff could not prove an implied waiver, ring strikingly true to the instant case:

> In the case at bar there was no proof of any reliance by the complainant on the act of the company in accepting her check and the issuance of a new policy. This complainant knew the policy was not in force when she forwarded the check and premium notice to the company. This complainant knew the receipt by the company of this check would not afford coverage for the May 7, 1966 accident by the terms of every statement she had received from the company. . . . The only inference which can be reached from the act of complainant in delivering the check and premium notice to the company's branch office in Memphis is that she attempted to thereby induce the defendant to waive the forfeiture for nonpayment of premium by its acceptance of the check. We do not believe implied waiver can rest on these facts. This complainant cannot be heard in equity to say she understood the terms by which she could have effected continuous coverage, not comply therewith, have the premium mailed in for her, and then

> contend the defendant has impliedly waived its right to insist
> on the forfeiture by the issuance of the new policy.

*Gitter*, 450 S.W.2d at 785. The *Gitter* court reached that holding in spite of the fact that the defendant's adjuster contacted plaintiff immediately following the accident and "proceeded with a normal investigation," at one point telling the plaintiff "Don't worry about it; it will be taken care of." *Id.* at 782. Needless to say, defendant in the instant case made no such representations.

¶ 14. The instant case contrasts sharply with those relied upon by plaintiff, in which insurers were required to cover claims because the insurers' conduct led the insureds to believe the insurers intended to provide coverage. For example, in *Central National Insurance Group of Omaha v. Grimmett*, 340 So. 2d 767 (Ala. 1976), the insured, like plaintiff here, was in an automobile accident shortly after his policy expired due to his failure to pay his premium on time. The next day, insured reported the accident to his insurance agent, learned that his policy had lapsed, and tendered payment for his renewal policy. The insured never received notice from the insurer or its agent that the insurer was denying coverage for his claim. As a result, the court concluded that, by the agent's acceptance of Grimmett's payment and by the agent's failure to notify him that insurer only intended for coverage to start the day payment was received, that is, the day after the accident, the insured "was led to believe ... that the insurance company intended to waive its rights and provide coverage." *Id.* at 768. "[A]lthough Central may not have intended to waive its rights, this intention was not conveyed to the insured Grimmett. Indeed, Grimmett was led to believe the opposite — that the insurance company intended to waive its rights and provide coverage." *Id.* The court held that because the defendant had failed to limit the offer to reinstate, it was estopped from denying coverage.

¶ 15. In contrast, defendant here specifically informed plaintiff that she had no insurance coverage on the day of her accident and that her claim was denied for that reason. Thus, unlike Grimmett, plaintiff had no reason to believe defendant intended to waive its right to deny the claim and provide coverage.

¶ 16. Plaintiff's argument that we should follow *Reed v. Vermont Accident Insurance Co.*, 110 Vt. 501, 9 A.2d 111 (1939), is similarly unavailing. There, Reed's accident insurance policy lapsed due to nonpayment of the premium on April 1, 1938. On or about June 23, the agent of the insurer wrote to Reed and advised him that an immediate payment would cause his policy to be in force from that day until

August 1. Reed placed the payment in the mail to the agent on June 27 and was seriously injured in a car accident at 1:15 a.m. on June 28, while the proverbial check was in the mail. The agent received the payment later in the morning of June 28. This Court held that because the insurer's agent expressly authorized Reed to mail in the premium, Reed's "deposit of the premium in the mail [was] sufficient to complete the contract." *Id.* at 504-05, 9 A.2d at 113. Thus, the contract was in force at the time of his accident. *Id.* at 506, 9 A.2d at 114. By contrast, plaintiff in the instant case did not accept defendant's offer to reinstate coverage by tender of the premium payment until *after* the loss had occurred and *after* defendant had denied coverage. Indeed, plaintiff can point to no provision in her policy or the reinstatement documents generated in August 2003 that is reasonably subject to different interpretations concerning (1) the fact that she had no insurance at the time of the accident, (2) the fact that insurer denied her claim, and (3) the fact that her lack of insurance was a proper basis for denying her claim. And although defendant offered to reinstate her policy back to August 13, it never retracted or altered its initial denial of the claim.

¶ 17. In denying plaintiff's resubmitted claim, defendant relied in part on the known-loss rule, which states that an insurer need not cover a loss known to the insured at the time the parties enter into an insurance contract, unless the loss was also known to the insurer at the time of the formation of an insurance contract. See 7 L. Russ & T. Segalla, Couch on Insurance § 102:8, at 102-23 (3d ed. 1997) [hereinafter "Couch"] ("Given the underlying basis of the doctrine, and the right of the parties to agree to cover existing losses, it has been recognized that the known loss doctrine does not apply if the insurer also knew of the circumstances on which it bases the defense."). Plaintiff argues that the known-loss rule does not protect defendant in this case, because defendant also knew of the existing loss she claimed as a result of the August 13 accident. As noted, the trial court referred to the known-loss rule and decided this issue on that part of the rule that holds the insurer has no duty to defend or indemnify the insured with respect to the known loss ab initio, unless the parties intended the known loss to be covered.

¶ 18. The known-loss rule recognizes that "[i]mplicit in the concept of insurance is that the loss occur as a result of an event that is fortuitous, rather than planned, intended, or anticipated." Couch § 102:7, at 102-17. In other words, the rule effectuates the cornerstone principle that "insurance is fundamentally based on *contingent risks*

which may or may not occur." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1210 (Ill. 1992). Thus, the known-loss rule protects insurers from unwittingly insuring losses that have already occurred, as opposed to risks of loss, see *Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co.*, 997 F.2d 172, 179 (6th Cir. 1993) ("Because insurance policies ... are designed to insure against fortuities, a fraud is worked when they are misused to insure a certainty."), and the exception for losses known to the insurer protects insureds by resolving the question of coverage in favor of the insured, see *N. Sec. Ins. Co. v. Rossitto*, 171 Vt. 580, 582, 762 A.2d 861, 864 (2000) (mem.) (recognizing policy of this Court to favor complete coverage when interpreting insurance contracts). Here, neither of those concerns is present because it is undisputed that, although both parties knew of the loss before the policy was reinstated, defendant explicitly and properly denied the claim *before* plaintiff received and accepted the offer to reinstate her coverage and never expressed an intention to retract that denial or provide coverage. Because it is far from clear on this record that defendant intended to cover this known loss, plaintiff's attempt to invoke the exception for losses known to the insurer is unavailing. Indeed, this case is more properly viewed as not implicating the known-loss rule in the first place, given defendant's prompt and proper denial of the claim during the period of lapse coupled with plaintiff's failure to show that defendant somehow rescinded the denial of coverage or otherwise altered its position. In any event, the exception to the known-loss rule does not assist plaintiff here.

¶ 19. Finally, plaintiff argues that the court below erred in holding that, because the offer to reinstate coverage was generated by a computer, it was "not an intentional offer to cover the already-denied claim." We agree with plaintiff that a "contract is no less a contract simply because it is entered into via a computer." *Forrest v. Verizon Communications, Inc.*, 805 A.2d 1007, 1011 (D.C. 2002). Nonetheless, the computer-generated offer did not indicate any intent on defendant's part to cover the already-denied claim or to otherwise alter its decision to deny the claim. Therefore, we conclude that the superior court correctly ruled in defendant's favor.

*Affirmed.*