Vermont Superior Court
Filed 02/17/21
Washington Unit

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 339-10-20 Wncv

---

**Intralot, Inc. vs. Vermont Department of Buildings**

---

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment MotionName        for Summary Judgment
Motion#        2 (Motion: )
Filer:        Bartholomew J. Gengler
Filed Date:        November 16, 2020

The motion is GRANTED.

Regarding the State's Motion for Summary Judgment and

Intralot's Motion to Defer Decision

This case arises out of the most recent competitive procurement process by Vermont's Office of Purchasing and Contracting (OPC) designed to select the next contractor responsible for providing lottery services in Vermont.  The contract is valuable and long in duration (an initial 10-year term is contemplated).  OPC issued the relevant request for proposals (RFP) in 2020.  Before any bids had been submitted, Petitioner Intralot Inc., the incumbent contractor, filed suit against the State in a separate case (No. 299-9-20 Wncv) claiming, among other things, that the terms of the RFP were intentionally drafted to make the procurement process unfair to it, violating its state and federal equal protection rights, and that those violations are redressable regardless of the outcome of the procurement process.[1]  With that case just begun, all bidders, including Intralot, submitted their proposals.  OPC, however, then disqualified Intralot's bid, finding that the litigation bond it had submitted materially failed to comply with the terms of the RFP.  In response to that disqualification decision, Intralot filed this Rule 75 case.

In the complaint in this case, Intralot asserts that the disqualification decision was "arbitrary and capricious, and contrary to the plain language of the 2020 RFP."  Complaint ¶ 39.  In other words, OPC abused its discretion.  It does not otherwise identify any legal basis for its claim.  Intralot expressly asserted that it sought Rule 75 review, it sought a jury trial, and it asked the court to reverse OPC's disqualification decision.  The request for a jury trial implies that Intralot was contemplating developing

---

[1] The section of the RFP at issue in this case is not one at issue in the other case.

the facts anew in this proceeding rather than relying on the administrative record (presumably implying some form of *de novo* review).

The State then filed a motion for summary judgment. It did not focus on the legal basis for Intralot's Rule 75 claim, and thus what standard of review, if any, may be available in this case. Rather, it presumed that some form of *record review* is available, variously cited to different standards (all deferential to the State) that may apply, and argued that its disqualification decision was, essentially, reasonable or otherwise within its discretion such that the court should not disturb it.

In opposition, Intralot also did not focus on identifying any legal basis for Rule 75 review. It argued instead that there are disputes of fact that require a jury trial (again implying some form of *de novo* review), the State waived any right to disqualify Intralot's bid, and otherwise the disqualification decision was motivated by impermissible bias or animus against it. "These issues require factual determinations by the jury as to the subjective motives and intent of the State, including the credibility of State witnesses who deny these assertions." Intralot's Opposition to Summary Judgment 1 (filed Dec. 22, 2020). Intralot also argued in the alternative that the State's motion jumped the gun, and the court should defer ruling on it until Intralot has had a better opportunity to conduct discovery.

In an entry filed December 23, 2020, the court noted that, "To meaningfully perform *any* Rule 75 review, Intralot's entitlement to review must be clearly identified so that, if any review is available at all, its standards may be determined." It thus requested that the parties brief that matter as a component of summary judgment proceedings, and the parties did so. The State now takes the position that no review under Rule 75 is available in this case. Intralot argues that it is entitled to review in the nature of mandamus.

The threshold issue in this case is whether Intralot is entitled to review of OPC's disqualification decision, and if so, what the standard of review may be. The nature of the administrative decision at issue is clear in the administrative record, is not disputed, and does not require any discovery or factual determinations prior to its analysis by the court.

*The decision at issue*

The administrative decision at issue in this case relates to Intralot's response to a litigation bond requirement in the RFP. Section F.21 of the RFP required as follows:

Each respondent must submit with the Proposal a litigation Bond in the amount of five hundred thousand dollars ($500,000). A claim upon the Bond may be made by the Lottery if:

1. The respondent sues the Vermont lottery, the State of Vermont, or any of their officers, employees, representatives, other contractors, or retailers with regard to any matter relating to this RFP, determination of responsiveness of Bidders or the award of a contract pursuant to this RFP; and

2. The lottery or other defendant is the prevailing party in such suit.

The purpose of the Bond is to permit the Lottery or other defendants to recover damages, including the cost of appeal relative to the additional cost in compensation to the current bidder during implementation or conversion delay, and including reasonable attorneys' fees, expenses and court costs resulting from such litigation. The Litigation Bond shall remain in effect for a period of two (2) years from the date of submission of the Proposal.

The RFP thus clearly required a litigation bond actionable on a prevailing-party basis. In response to the RFP, a bidder submitted this question:

. . . . It is widely accepted practice in the lottery industry (and other industries undergoing public procurements) to include in Litigation Bonds a third condition that would need to be satisfied before the Bond may be drawn upon, as follows:

3. A court determines that the action or any portion thereof was frivolous, or was brought in bad faith, or was not brought upon reasonable grounds.

Would the Lottery be willing [to] add this text to the RFP requirement in order to conform to this industry standard?

In other words, relying on an asserted industry standard, the questioner sought to substantially weaken the prevailing-party standard to a frivolity/bad faith/no reasonable grounds standard. The response from OPC was unequivocal: "The State will not add such condition." Intralot acknowledged notice of this question and answer prior to submitting its proposal.

The litigation bond that Intralot submitted with its proposal nevertheless included the identical third condition that weakens the standard for invoking the bond and that the State had expressly said it would not permit.[2]

OPC disqualified Intralot's bid on that basis. In an e-mail to Intralot, OPC wrote:

> I am writing to inform you that the State has concluded that Intralot's September 3, 2020 proposal was materially non-compliant with the requirements set forth in the Request for Proposal for Lottery Gaming Services, Sales Channels and Related Systems dated July 15, 2020. In particular, RFP Section F.21 required bidders to submit a litigation bond consistent with two specifically enumerated conditions. Intralot added a third condition to its litigation bond, which materially and substantially failed to comply with the RFP's litigation bonding requirement. Of further note, Intralot submitted its materially non-compliant bond, despite the State expressly stating during the question and answer period that the State would not amend the RFP to include such a limiting third condition. As a result of such material non-compliance, the State has disqualified Intralot's proposal.

This is the decision that Intralot would like the court to reverse.

*Whether relief in the nature of mandamus is available*

Intralot argues that it is entitled to review in the nature of mandamus of OPC's disqualification decision because OPC abused its discretion.

When the civil rules were adopted in 1971, the extraordinary writs were abolished. V.R.C.P. 81(b). As the Reporter's Notes reflect, "The abolition of the extraordinary writs is consistent with the provisions of Rules 74 and 75, providing exclusive remedies for review of governmental action. All substantive rights to relief previously available by such writs may be obtained by proceeding under those rules."[3] Reporter's Notes, V.R.C.P. 81. Rule 74 is the procedure that applies when there is a

---

[2] To the extent that Intralot argues that its bond complied with RFP § F.21 or that discovery is required to make that determination, such arguments "would require the cheerful credulity of a very young child." *State v. Green Mt. Future*, 2013 VT 87, ¶ 11, 194 Vt. 625 (quoting the trial court). Intralot's bond unmistakably violated § F.21 by including the banned third condition and thereby seriously undermined the protection the bond requirement clearly was intended to provide.

[3] In other words, the abolition of the writs did not eliminate the substantive relief that they provided. It merely changed the procedures applicable to the relief they offered.

statutory right to review of an administrative decision in superior court.  V.R.C.P. 74(a); see also Reporter's Notes—1981 Amendment, V.R.C.P. 74 ("The rule now applies whenever a statute creates an entitlement to seek review of, or appeal from, the decision in a proceeding determined by a state agency, and the review or appeal is to be decided in the superior court.").

Rule 75 is the procedure that applies to review of an administrative decision when there is no statutory right to review, but it applies *only* "if such review is otherwise available by law."  V.R.C.P. 75(a). Barring some statutory exceptions, review under Rule 75 typically is only available "as a matter of general law by proceedings in the nature of certiorari, mandamus, or prohibition."[4]  Reporter's Notes— V.R.C.P. 75.  Rule 75 itself does not create any right to review.  See Reporter's Notes—V.R.C.P. 82 (explaining that the rules govern pleadings, practice, and procedure and do not "abridge, enlarge or modify any substantive rights" (quoting 12 V.S.A. § 1)).

Otherwise, there is no broadly applicable right to review of an administrative decision unrelated to a "contested case."  3 V.S.A. § 815(a) (review of contested cases under Administrative Procedures Act); *Mason v. Thetford Sch. Bd.*, 142 Vt. 495, 498 (1983) ("We have held on many occasions that there is no absolute right to appellate review of administrative decisions.").  Unlike many jurisdictions, Vermont also has no broadly applicable statutory right authorizing bid protests challenging State procurement processes in court.

This is not a contested case, there is no statutory right to review, and Intralot has not pleaded (in this case) its grievance about the disqualification decision as an actionable legal claim apart from judicial review of an administrative decision, which it expressly seeks.[5]  It grounds its objection to an alleged abuse of discretion in the law of mandamus.

"A court can issue a writ of mandamus . . . only under certain circumstances: (1) the petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, *but not for review of the performance of official acts that involve the exercise of the official's judgment or discretion*; and (3) there must be no other adequate remedy at law."  *Petition of Fairchild*, 159 Vt. 125, 130 (1992) (emphasis added); see also *State v. Forte*, 159 Vt. 550, 555 (1993) (duty appropriate for mandamus must be "simple and definite") (citation omitted)); *Bargman v. Brewer*, 142 Vt. 367, 369 (1983) (noting that a ministerial act is one "regarding which nothing is left to discretion" (citation omitted)).

---

[4] A handful of Vermont statutes expressly provide for review under Rule 75.  See, e.g., 13 V.S.A. § 5411b; 23 V.S.A. § 3115.

[5] . The court questions whether the rules of administrative appeal apply in this very proprietary commercial contest.

There is, however, a branch of mandamus law in Vermont, applied rarely, that may redress an "extreme abuse of discretion" in the right circumstances, and that is what Intralot claims here. The Vermont Supreme Court has described the extreme-abuse exception as follows:

> We have held that mandamus can, even if not granted by general law, be extended to "extreme abuses of discretion involving refusals to act or perform duties imposed by law." . . . .

> We recognize that mandamus review for extreme, arbitrary abuse of administrative discretion has been considered in a variety of circumstances, from veterinary board decisions to discretionary trial court decisions. These cases have all required that the alleged arbitrary abuse of discretion amount to a practical refusal to perform a "certain and clear" legal duty. Admittedly, the distinction between the failure to fulfill a legal duty and an extreme abuse of discretion amounting to a failure to fulfill a legal duty is opaque, as a writ of mandamus will typically be granted only when there has been a clear failure to fulfill a legal duty.

> Even assuming, however, that there is a difference between the two standards, plaintiff misses the mark here. Plaintiff is trying to distinguish between a decision that is wrong (and thus not subject to mandamus review) and one that is very wrong (thus subject to mandamus review), asserting that the decision here is very wrong because it is allegedly based on factual errors. Again, this is a distinction without a relevant difference. Assuming we could grade error in the manner plaintiff argues, our decisions allowing mandamus in certain circumstances are based not on the degree of error, but instead on whether the official actor is exercising discretion at all. *Moreover, in the rare instances where this Court has extended mandamus to extreme abuses of discretion, the legal duties being refused were clear.*

*Inman v. Pallito*, 2013 VT 94, ¶¶ 14–16, 195 Vt. 218 (citations omitted; emphasis added). Thus, to whatever extent mandamus may be available to review a discretionary act, there still must be a clear and certain duty at stake, and the disputed exercise of discretion must amount to a virtual refusal to fulfill it. See *Skiff v. South Burlington School District*, 2018 VT 117, ¶ 25, 208 Vt. 564 (residents' mandamus claim against school district improperly founded on nonexistent constitutional right); *Wool v. Menard*, 2018 VT 23, ¶ 15, 207 Vt. 25 (inmate's mandamus claim that DOC failed to use competitive bidding process properly predicated on specific, statutory obligation to use competitive bidding process); *Petition of Fairchild*, 159 Vt. 125, 130 (1992) (adjacent landowners' mandamus claim against Town properly predicated on right to enforce relevant judicial decision and Town zoning regulations).

In this regard, Intralot makes policy arguments as to why review should be available in this case and otherwise cites to 29 V.S.A. § 903 and Administrative Bulletin 3.5. The policy arguments do not point out any clear and certain duty, however, and thus might be better directed at a legislative audience. Section 903 and Administrative Bulletin 3.5 are similarly unhelpful to Intralot.

Section 903, in pertinent part, reads as follows:

(a) When any governmental agency is in need of any of the items mentioned in this chapter, the responsible officer thereof shall requisition therefor upon the Commissioner of Buildings and General Services, and the Commissioner of Buildings and General Services shall purchase the items by either advertising for bids or by letters of inquiry and the contract for those items shall be awarded to the person whose bid or quotation is in the best interest of the State. Subject to the provisions of subsections (b) and (c) of this section, the Commissioner of Buildings and General Services may reject any or all bids or quotations and with the approval of the Secretary of Administration, procure items in such manner as may be in the best interest of the State.

(b) When purchasing any items mentioned in this chapter, the Commissioner of Buildings and General Services, in any determination of the best interest of the State shall consider (1) specified quality; (2) price; (3) ease of access of supply; (4) incidental administrative costs; (5) proven reliability of bidder; (6) use of recycled materials or products; (7) minimizing the creation, by the State, of solid waste; (8) the extent to which the usage of the item involves the generation of pollutants; (9) life cycle costs, if required under the State Agency Energy Plan, as implemented; (10) the interests of the State relating to the proximity of the supplier and the costs of transportation, and relating to the economy of the State and the need to maintain and create jobs in the State; and (11) the use of railroads and the increased revenues returning to the State from its railroad leasing program.

29 V.S.A. § 903(a), (b). Thus, § 903(a) gives Buildings and General Services (BGS) (of which OPC is a part) wide discretion "by either advertising for bids or by letters of inquiry" to make purchasing decisions subject to a generally stated best interests standard. Subdivision (b) does not limit that discretion other than to itemize certain issues that BGS "shall consider" when assessing the State's best interests. That list of items, however, is obviously both over- and under-inclusive. It clearly includes numerous items that will be completely irrelevant to many purchases and omits many items that would be extremely important to others, and it does not set standards by which any should be measured. More to the point, though, § 903 nowhere creates any clear and certain duty to omit litigation bond requirements from RFPs or to ignore bidders' failure to comply with such requirements.

Administrative Bulletin 3.5 is a *policy* of the Agency of Administration providing internal guidance to State agencies as to procurement and contracting procedures. It is a set of practices that apply when the State steps into the private marketplace to buy something. It is a mere policy (not a duly promulgated rule), does not affect bidders' substantive rights, and is not enforceable by them. See 3 V.S.A. § 845(a) (duly promulgated rules have the "force of law"). Even if it were, however, Intralot nowhere identifies in Bulletin 3.5 any clear and certain duty to omit litigation bond requirements from RFPs or ignore bidders' failure to comply with such requirements.

Ultimately, Intralot uses § 903 and Bulletin 3.5 to bolster its policy argument about the details of fairness in competition, not to find within either any clear and certain duty by which to assay the State's alleged abuse of discretion. There is no virtual refusal to perform a duty at issue in this case. OPC crafted an RFP, received bids, and disqualified Intralot's because it plainly did not comply with the RFP. One would have to squint to see any abuse of discretion in that, much less any amounting to a refusal to perform a clear and certain duty.

Intralot's claim is not saved by its assertion that OPC waived RFP § F.21 or should be estopped from enforcing it. Intralot vaguely asserts waiver and estoppel, but it has not alleged facts that could remotely support either. A waiver is a "voluntary relinquishment of a known right." *Anderson v. Coop. Ins. Companies*, 2006 VT 1, ¶ 10, 179 Vt. 288. Equitable estoppel requires that: "(1) the party to be estopped must know the facts; (2) the party being estopped must intend that its conduct be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the conduct of the party to be estopped to its detriment." *Town of Victory v. State*, 174 Vt. 539, 540 (2002). Intralot asserts that in a prior bid process, under a completely separate RFP, it submitted a similarly noncompliant litigation bond and OPC never did anything about it. It does not allege that OPC was aware of the noncompliance, that OPC confirmed that the noncompliance would not lead to disqualification, or that OPC did anything to invite the noncompliance. Moreover, there are no allegations that could possibly explain how previously submitting a noncompliant bond under a different RFP could establish any waiver or estoppel permitting Intralot to do the same in a subsequent, separate bid process. This is insufficient.

In these circumstances, Intralot's ambition to look behind the administrative decision for which it seeks review and to compel the testimony of any State employees or agents it deems relevant to plumb their private motivations is groundless and irrelevant since the motive for disqualification in these circumstances will not assist review. For that reason there is no need for further discovery.

Order

For the foregoing reasons, Intralot's motion to defer ruling is denied.  The State's motion for summary judgment is granted.  The State shall submit a form of judgment.  V.R.C.P. 58(d).

So Ordered.

Robert R. Bent,
Judge