IN THE COURT OF APPEALS OF TENNESSEE

FILED

July 18, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

TED C. SMITH,                        ) C/A NO.  03A01-9603-CH-00076
                                     ) WASHINGTON COUNTY CHANCERY COURT
         Plaintiff-Appellee,         )
                                     )
                                     )
                                     )
                                     )
v.                                   ) HONORABLE G. RICHARD JOHNSON,
                                     ) CHANCELLOR
                                     )
                                     )
                                     )
                                     )
THE SHELBY INSURANCE COMPANY         )
OF THE SHELBY INSURANCE GROUP,       ) REVERSED
                                     ) COMPLAINT DISMISSED
         Defendant-Appellant.        ) REMANDED


ALBERT J. HARB of HODGES, DOUGHTY & CARSON, Knoxville, for
Appellant

MARK S. DESSAUER of HUNTER, SMITH & DAVIS, Kingsport, for
Appellee


O P I N I O N


                                          Susano, J.


1

This is a declaratory judgment action. The complaint seeks a declaration that a loss caused by damage to the plaintiff's building is covered under a commercial property insurance policy issued by The Shelby Insurance Company (Shelby). Following a bench trial, the Chancellor held that there was coverage under the policy and awarded the plaintiff a judgment for $12,352.92. Shelby appeals, arguing that there is no coverage because the premises were vacant at the time of the loss. It also argues that the loss is not covered because the policy excludes coverage for damages "[c]aused by or resulting from theft." The plaintiff, Ted C. Smith (Smith), raises, as an additional issue, the failure of the trial court to award the statutory bad faith penalty authorized by T.C.A. § 56-7-105(a).

Our review is *de novo*; however, the record comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the trial court's findings of fact. Rule 13(d), T.R.A.P.; *City of Kingsport v. Stewart*, 920 S.W.2d 658 (Tenn. App. 1995). The trial court's conclusions of law are not entitled to a presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

2

I

On or about March 2, 1993, an unknown person (or persons) surreptitiously entered a building in which Smith was warehousing personal property and ripped out electrical wiring, plumbing pipes, and condenser coils in the air conditioning system, in order to extract copper wiring and tubing. In the process of removing the copper, the individual(s) did extensive damage to the interior of the building. Smith reported the incident to the police, who in their report listed the incident as a theft. Thereafter, Smith filed a claim with the insurance agent through whom the policy had been secured.

On April 5, 1993, a representative of Shelby sent Smith a letter, which stated, in part, as follows:

> In order that the Company may continue to handle this matter, we want you to know that we are proceeding under a Reservation of Rights. We are reserving our rights under the policy for the following reasons:
>
> *       *       *       *
>
> **6.    Vacancy**
> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:
> **a.**    Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
> **(1)** Vandalism;
> **(5)** Theft; or
> **(6)** Attempted theft.

> As you can see from the above, it is probable that all or a part of your loss may not be covered under your insurance policy. We shall contact you further as soon as a decision regarding coverage has been made.

(bold print in original). On June 1, 1993, Shelby sent Smith a letter denying coverage. That correspondence also relied upon the vacancy provision. No mention was made of any other policy provision in either letter.

On January 6, 1994, the plaintiff filed the complaint in the case at bar. Shelby's answer was filed on March 7, 1994.

On August 28, 1995, Shelby filed a Motion to Amend its Answer to include, among other things, the following defense:

> . . . under "Causes of Loss-Basic Form, subsection 8", the defendant avers that no coverage is provided for vandalism caused by or resulting from theft except for the building damage caused by the breaking in or exiting of burglars.

The Chancellor conducted a hearing on September 8, 1995. He found the following operative facts pertaining to the cause of the loss:

> Someone . . . got into that property . . . and ripped out the electrical conduit and parts of heat pumps and air conditioning equipment, and generally, ripped the interior of the building apart, evidently to take the copper out of the conduit and out of the air

4

conditioner and out of other interior parts
and portions of the building, and removed
that copper and took it with them leaving the
building in a damaged condition.

He determined that the "vacancy" provision referred to in the company's reservation of rights letter was not applicable, finding that the property was in fact occupied by Smith and being utilized by him as a warehouse.[1] Curiously, the Chancellor did not address, in any way, Shelby's defense based upon the exclusionary language pertaining to loss caused by theft.[2]

II

In *Tata v. Nichols*, 848 S.W.2d 649 (Tenn. 1993), the Supreme Court reiterated the familiar general principles applicable to the construction of insurance policies:

The analysis used in construing insurance policies is well settled. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." *Blaylock & Brown Construction, Inc. v. AIU Insurance Co.*, 796 S.W.2d 146, 149 (Tenn. App. 1990). Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. *See e.g., Moss v. Golden Rule Life Insurance Co.*, 724 S.W.2d 367, 368

---

[1]The Chancellor also rejected Shelby's defense that Smith did not have an insurable interest in the property. Shelby did not appeal this ruling.

[2]Our review is not restricted to the trial court's findings. We must determine if the result reached by the lower court is correct regardless of "the reasoning employed to reach the result." *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. App. 1984).

> (Tenn. App. 1986).  Where the ambiguous
> language limits the coverage of an insurance
> policy, that language must be construed
> against the insurance company and in favor of
> the insured.  ***Allstate Insurance Co. v.
> Watts***, 811 S.W.2d 883, 886 (Tenn. 1991).

*Id.* at 650.  We approach our *de novo* review with these principles in mind.

### III

Although not addressed by the Chancellor, we believe Shelby's defense based upon the "theft" exclusion is dispositive of this appeal.  Therefore, we will first address that issue.  We will, as a part of our inquiry, examine the plaintiff's theory that Shelby should not be permitted to assert this exclusion under the facts of this case.

Smith argues that because neither the reservation of rights letter nor the coverage denial letter mentioned the damage "[c]aused by or resulting from theft" exclusionary provision, Shelby has either waived its rights under that provision or is equitably estopped from relying upon those rights.  We disagree.

It is clear that Shelby has not *expressly* waived reliance on the "theft" provision, as the reservation of rights letter contains the following statement:

6

> No act of any Company representative, while investigating, negotiating settlement of the claim or defending a lawsuit, shall be construed as waiving any Company rights. The Company reserves the right under the policy to deny coverage to your [sic] or anyone claiming coverage under the policy.

The question then is whether Shelby should be equitably estopped from asserting this exclusionary provision. As stated by the Court of Appeals in the case of *Gitter v. Tennessee Farmers Mut. Ins. Co.*, 450 S.W.2d 780, 783 (Tenn. App. 1969),

> [t]he essential elements of an equitable estoppel as related to the party claiming the estoppel, are, (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially. *Provident Washington Ins. Co. v. Reese* (1963), 213 Tenn. 355, 373 S.W.2d 613.

*Id.* The *Gitter* court noted that "the crux of the issue on equitable estoppel is whether the complainant relied on these statements and this conduct and thereby changed her position prejudicially." *Id.* Subsequent cases dealing with equitable estoppel have likewise emphasized the reliance and detrimental change of position requirements. *See Robinson v. Tennessee Farmers Mut. Ins. Co.*, 857 S.W.2d 559, 563 (Tenn. App. 1993) ("The burden of proof is on the insured to prove that a misrepresentation was made and that the insured reasonably relied upon the misrepresentation."); *Spears v. Commercial Ins. Co. of*

7

*Newark, N.J.,* 866 S.W.2d 544, 549 (Tenn. App. 1993) ("The party alleging waiver must show how he has been prejudiced by any change of position.")

In the case at bar, Smith has not demonstrated that he undertook a prejudicial change in position based upon Shelby's letters. Our research reveals that a contention quite similar to Smith's has been made in at least two prior Tennessee cases, and was summarily rejected in both instances. The first case elicited the following comments from the Supreme Court:

> The second contention, that there was a waiver of the policy provisions mentioned, or that the Insurance Company is estopped to rely thereon, must be denied.
>
> These defenses, waiver and estoppel, are based on a letter written by the Company to Lewellyn wherein it pointed out certain policy provisions under which it contended it was not liable under its policy. However, since in this same letter, the Insurance Company reserved every defense available to it under the policy, *and there is no showing whatsoever of any harm or injury to the appellant because of the letter, the defenses are not good.*

*Lewellyn v. State Farm Mut. Auto. Ins. Co.,* 438 S.W.2d 741, 742-43 (Tenn. 1969) (emphasis added; footnote omitted).

In *Spears v. Commercial Ins. Co. of Newark, N.J., supra,* the following was said:

8

> Plaintiff also contends that Commercial waived its defense to the effect that plaintiff had not suffered an injury caused by accident. Plaintiff bases this contention on a letter sent to plaintiff by Commercial prior to this suit. In this letter, Commercial advised plaintiff that it would not be paying lifetime benefits under the accident provision of the policy because "his back injury occurred in 1943 prior to the effective date of [the] policy and not while the policy is in force." It is plaintiff's assertion that this is inconsistent with the position taken by Commercial in this litigation--that the injuries complained of in plaintiff's complaint were not caused by accidental means.
>
> The party alleging waiver must show how he has been prejudiced by any change of position. *Prudential Insurance Co. of America v. Falls,* 169 Tenn. 324, 87 S.W.2d 567, 569 (1935). While we have serious doubts as to whether there has been any change of position by Commercial, there has been no showing by plaintiff how he has been prejudiced by Commercial's alleged "change of position." This argument is likewise without merit.

*Spears,* 866 S.W.2d at 549.

As previously indicated, Smith has not shown detrimental reliance upon Shelby's assertions in its reservation of rights and denial letters. He refers to the fact that he repaired the building at his own expense; but we do not see how it can be claimed that this activity was prejudicial to him or even taken in reliance on Shelby's statements in the two letters. Therefore, we reject Smith's claims of waiver and estoppel.

9

We now turn our attention to the "theft" exclusionary language of the policy upon which Shelby relies. That exclusion is found in a section of the policy entitled "COVERED CAUSES OF LOSS." The relevant portions of that section of the policy are as follows:

> A.  **COVERED CAUSES OF LOSS**
>
> . . . . Covered Causes of Loss mean the following:
>
>         *     *     *
>
> 8.  **Vandalism**, meaning willful and malicious damage to, or destruction of, the described property.
>
> We will not pay for loss or damage:
>
>         *     *     *
>
> b.  Caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

(bold print in original). The plaintiff does not claim that any of the claimed loss resulted from "damage caused by the breaking in or exiting of burglars." Therefore, the issue is squarely presented: Is the plaintiff's loss one resulting from vandalism, a covered event, or damage "[c]aused by or resulting from theft," an excluded loss?

10

We believe the parties, by the language of the policy, intended to exclude from coverage the type of loss claimed by the plaintiff in this case. It is significant that the exclusionary language pertaining to damage "[c]aused by or resulting from theft" follows immediately after language pertaining to the covered loss of vandalism. We believe the parties purposely intended to reflect their understanding that damage from theft would not be included within the general concept of vandalism.

Our holding is bolstered by the definition of vandalism found in the policy--"willful and malicious damage to, or destruction of, the described property." This definition refers to the type of damage caused by vandals as that concept is ordinarily understood, i.e., damaging something simply for the sake of damaging it. The concept of theft is entirely different. A thief enters a building in order to steal something; certainly a thief's primary focus is not the malicious defacing, destroying, or damaging of property. If the motivation and end result is that of theft and the claimed loss is "[c]aused by or result[s] from [that] theft," there is no coverage.

In this case, every knowledgeable witness testified that the apparent motivation for the entry into Smith's building was the stealing of copper wiring and tubing. Significantly, Smith himself so testified in several instances, including the following:

11

Q: Now, this photograph and your testimony regarding Frank Barry Heating & Air, it is my understanding that basically, that whoever did this to your building, was interested in the copper?

A: Yes.

Q: They wanted and did take all the copper that they could take out of this building?

A: Yes.

          *          *          *          *

Q: And it is your belief as you sit here today, that the main thing that these people were interested in was the copper and the value to sell that copper?

A: Well, that's my opinion, 'cause like I say, there's other buildings all over town they was doing it at the same time.

Robert E. Krzeminski, a licensed electrical contractor who did electrical repairs to the building, testified as follows:

Q: And what did you discover when you made your initial inspection?

A: The building was vacant and someone had gone in there and I believe the primary reason for being there was to get scrap copper. They were after wire, they were after plumbing, they were after refrigeration tubing, all kinds of copper they were primarily after.

          *          *          *          *

Q: All right. Do you remember we talked about, and I think you kind of described it fairly clearly for us, about how they took all this wiring out?

A: Uh-huh.

Q: And they took all the copper out of the air conditioning unit?

12

A: Yeah.

Q: They were after the copper weren't they?

A: I think at that time copper was pretty expensive. Well, copper has been high for the last five years. But prior to that it was pretty cheap.

Smith did not offer any proof suggesting that any part of the damage to his building was caused by the malicious act of another, i.e., damage simply for its own sake. We find and hold that the cause of Smith's loss was damage due to theft of the copper wiring and tubing, and not due to covered vandalism. The damage to the building occurred because the thief or thieves wanted to get to the copper. The Georgia case of *Pacific Indemnity Co. v. N.A., Inc.,* 172 S.E.2d 192 (Ga. App. 1969) reaches the same conclusion based upon analogous facts.

It is an elementary concept of insurance law that parties are free to allocate risks of loss as they see fit. If the policy of insurance reflecting the allocation of those risks is clear and unambiguous, as in this case, we apply it as written. The parties here chose to exclude from coverage the risk of damage to the premises caused by or resulting from theft. Unfortunately for Smith, this is exactly the kind of damage that occurred in this case. The Chancellor's judgment is contrary to the facts in this case.

Since we find that Shelby's defense based on its theory that the plaintiff's loss was caused by or resulted from theft is

13

sustained by the proof, we do not find it necessary to address its alternative defense theory that the premises were vacant at the time of the loss. Obviously, it is not necessary to address the plaintiff's issue pertaining to the alleged bad faith of Shelby.

For the aforementioned reasons, the judgment of the Chancellor is reversed and the complaint dismissed at Smith's costs. Costs on appeal are taxed and assessed to Smith.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
Don T. McMurray, J.

14