# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 15, 2015 Session

## SOUTHERN TRUST INSURANCE COMPANY v. MATTHEW PHILLIPS

**Direct Appeal from the Circuit Court for Anderson County**
**No. B3LA0206     Donald Ray Elledge, Judge**

---

**No. E2014-01581-COA-R3-CV-FILED-JUNE 10, 2015**

---

This appeal involves the interpretation of an insurance policy in order to determine whether the policy provided coverage for damage caused by arson. The insurer and the insured filed cross-motions for partial summary judgment on this issue. The trial court found the policy ambiguous and construed it in favor of coverage, holding that arson was covered under the policy. Accordingly, the trial court granted the motion for partial summary judgment filed by the insured and denied the motion for partial summary judgment filed by the insurer. The insurer appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and THOMAS R. FRIERSON, II, J., joined.

Terrill Lee Adkins and Amy Victoria Peters, Knoxville, Tennessee, for the appellant, Southern Trust Insurance Company.

James Brandon McWherter, Franklin, Tennessee, and Clinton H. Scott, Jackson, Tennessee, for the appellee, Matthew Phillips.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Matthew Phillips is the owner of residential real property located in Lake City, Tennessee. The property was insured under a dwelling policy issued by Southern Trust Insurance Company. On or about February 27, 2013, a fire substantially damaged the residential structure located on the insured premises. Phillips promptly reported the loss to Southern Trust and fulfilled all duties imposed on him under the policy. Nevertheless,

Southern Trust denied that the fire was covered under the insurance policy. Southern Trust determined that the fire was intentionally set. Even though Phillips was not suspected of setting the fire, Southern Trust denied coverage pursuant to an exclusion in the policy providing that Southern Trust did not insure loss caused by "vandalism and malicious mischief, theft or attempted theft" if the dwelling was vacant. For purposes of this appeal, the parties do not dispute that the dwelling was vacant and that the fire was caused by arson.

Southern Trust filed a complaint for declaratory judgment in the Circuit Court of Anderson County, seeking a declaration that the policy did not provide coverage for the dwelling because, according to Southern Trust, the home "was damaged by vandalism and malicious mischief." Phillips filed an answer and counterclaim, asserting that Southern Trust was obligated to provide coverage for the loss because, according to Phillips, the home was damaged by fire, not vandalism and malicious mischief. Phillips asserted that Southern Trust's refusal to pay for the loss breached the parties' insurance contract and demonstrated bad faith.

Phillips filed a motion for partial summary judgment on the issue of whether the exclusion for "vandalism and malicious mischief" applied to his claim. He claimed that arson did not fall within the meaning of "vandalism and malicious mischief" as those terms were used in his policy. In the section of the policy entitled "Perils Insured Against," the policy described coverage for the dwelling under "Coverage A," coverage for other structures under "Coverage B," and coverage for personal property under "Coverage C." For Coverage A and Coverage B, the policy provided that it did not cover loss caused by "vandalism and malicious mischief, theft or attempted theft if the dwelling has been vacant for more than 30 consecutive days immediately before the loss." The policy did not define vandalism or malicious mischief. However, the policy listed "vandalism and malicious mischief" separate and apart from "fire" under Coverage C, which addressed coverage for personal property. Coverage C specifically provided coverage for personal property for the perils of:

1. Fire or lightning.

. . . .

8. Vandalism or malicious mischief.

Another section of the policy also differentiated between fire and vandalism or malicious mischief, stating that the policy covered "trees, shrubs, plants or lawns, on the Described Location for loss caused by the following Perils Insured Against: Fire or lightning, . . . Vandalism or malicious mischief, including damage during a burglary or attempted

2

burglary, but not theft of property."  In his motion for partial summary  judgment, Phillips argued that an ordinary business person would generally view arson as distinct from vandalism.  He also emphasized that this particular policy separately listed fire as an insured peril in two sections of the policy.  He argued that the policy, as a whole, "clearly ma[d]e a distinction between fire and vandalism" and treated losses caused by fire and losses caused by vandalism or malicious mischief as separate perils.  He noted that the vacancy exclusion for the dwelling only excluded vandalism and malicious mischief, without mentioning fire or arson.  Phillips cited caselaw from around the country holding that an insurance policy exclusion for "vandalism and malicious mischief" does not encompass arson.  He also provided the court with an opinion from another Tennessee trial court, reaching that same conclusion.  At the very least, Phillips argued, the policy was ambiguous as to whether coverage would be provided for an intentionally set fire. For all these reasons, he asked the trial court to find, as a matter of law, that arson did not fall within the "vandalism and malicious mischief" exclusion in the policy.

Southern Trust filed a response, along with its own motion for partial summary judgment.  Southern Trust asked the court to find, as a matter of law, that arson clearly and unambiguously fell within the policy's exclusion for vandalism and malicious mischief.  Southern Trust cited definitions from Tennessee's criminal statutes defining vandalism and malicious mischief, in addition to definitions from *Black's Law Dictionary*, which, Southern Trust claimed, generally defined the terms broadly to include any intentional destruction of property.  Thus, Southern Trust asked the court to consider the dictionary definitions of the relevant terms, without regard to how the terms were treated in other sections of the insurance policy addressing other types of coverage. Southern Trust also cited several cases from other jurisdictions in which courts have held that vandalism or malicious mischief includes a fire set by an unknown arsonist.

Following a hearing, the trial court entered an order granting the motion for partial summary judgment filed by Phillips and denying the motion filed by Southern Trust.  The court concluded that it was required to construe the insurance policy as a whole.  In considering the meaning of the relevant terms, the trial court noted that arson and vandalism are treated as separate and distinct offenses under Tennessee's criminal code. The court found that the policy itself also distinguished between the perils of fire and vandalism and/or malicious mischief, differentiating between the two in two different sections of the policy.  The trial court found the policy ambiguous as to whether arson would fall within the exclusion for vandalism and malicious mischief, in light of the policy's clear differentiation between those terms and fire.  The court noted that Southern Trust could have easily defined vandalism and malicious mischief or expressed a clear intent to include arson within the exclusion, but it failed to do so.  The court concluded,

3

Because the terms 'vandalism' and 'fire' are undefined, and are listed as two distinct perils in at least two separate sections of the policy, it is ambiguous as to which peril, 'vandalism' or 'fire,' covers arson. Giving operative effect to every provision and construing all ambiguities in favor of Mr. Phillips, the Court finds that, under the policy at issue, fire by arson is a separate and distinct peril from vandalism/malicious mischief.

The court further stated, "When an insurance company treats 'fire' and 'vandalism and malicious mischief' as two distinct causes of loss and the terms are undefined in the policy, a reasonable person would conclude that arson falls within the category of fire rather than under vandalism and malicious mischief." Accordingly, the trial court ruled that arson does not fall within the policy's exclusion for vandalism and malicious mischief.

After the trial court's ruling, the parties agreed to a consent judgment as to the amount of damages owed to Phillips. Thereafter, Southern Trust timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

Southern Trust presents the following issues, as we perceive them, for review on appeal:

1. Whether the trial court erred in finding the insurance policy ambiguous;

2. Whether the trial court erred in considering the section of the policy providing coverage for personal property when determining whether coverage existed under the portion of the policy providing coverage for the dwelling.

For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

## III. DISCUSSION

The precise arguments before us have not been considered by Tennessee appellate courts. However, this same type of policy exclusion was at issue in *Lorentz v. Phillips*, No. 01-A-01-9509-CH00417, 1996 WL 140527 (Tenn. Ct. App. Mar. 29, 1996). In *Lorentz*, an insurer denied coverage after a fire loss on the basis of a policy exclusion for vandalism and malicious mischief. *Id.* at *1. The trial court and the court of appeals

concluded that the insurer failed to prove that the vandalism and malicious mischief exclusion applied to the damage sustained by the insured. *Id.* at *2. The court of appeals explained that in order to prove either vandalism or malicious mischief, the insurer was required to demonstrate "malice, intention, or at the very least, knowledge." *Id.* at *3. Despite their investigation, however, the insurer's experts "could produce no evidence of intent or even of human agency in the genesis of the fire." *Id.* Therefore, the court found that the insurer failed to prove that the fire was not accidental in nature. *Id.* at *4. The court of appeals affirmed the trial court's order requiring the insurer to pay the policy proceeds to the insured. *Id.* at *1.

In the case at bar, Southern Trust concedes that the *Lorentz* court "did not offer any in depth analysis" regarding the enforceability of the exclusion. Both parties suggest that the issue of whether arson falls within the exclusion for vandalism and malicious mischief in this particular policy is a matter of first impression in Tennessee. We agree.[1] The arguments presented in this case regarding the applicability of the vandalism and malicious mischief exclusion were not discussed in *Lorentz,* and the *Lorentz* court found the exclusion inapplicable to the facts before it for other reasons. We decline to speculate about what the court would have held if other facts had been presented. *Lorentz* simply does not resolve the issue of whether arson qualifies as vandalism and malicious mischief under the insurance policy issued to Phillips.

"The courts in Tennessee have long recognized that a vacancy clause in a fire policy is reasonable, valid and binding." *Carroll v. Tennessee Farmers Mut. Ins. Co.,* 592 S.W.2d 894, 895 (Tenn. Ct. App. 1979). The parties do not question the enforceability of the vacancy clause, and the facts relevant to the issue on appeal are undisputed. The crux of this appeal is whether, as a matter of insurance and contract law, arson constitutes "vandalism and malicious mischief" under the policy. This issue is purely one of insurance policy interpretation.

"Tennessee law is clear that questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language." *Garrison v.*

---

[1] Tennessee courts have considered whether other types of acts constitute vandalism or malicious mischief within the meaning of an insurance policy. *See, e.g.*, *Beef N' Bird of America, Inc. for Use and Benefit of Galbreath v. Continental Cas. Co.,* 803 S.W.2d 234, 236 (Tenn. Ct. App. 1990) (concluding that the removal of shrubs from the insured premises fell within an exclusion for vandalism and malicious mischief); *McKinney v. Educator & Executive Insurers, Inc.*, 569 S.W.2d 829, 833 (Tenn. Ct. App. 1977) (holding that unauthorized drag racing of the insured's car during a test drive did not constitute malicious mischief within the meaning of his policy). However, the analysis in these cases does not provide any guidance with respect to the issues before us.

*Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012) (citing *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 436 (Tenn. 2012); *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008)).  Therefore, our standard of review is de novo with no presumption of correctness afforded to the trial court's conclusion.  *Id.* (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009).

> "[I]nsurance policies are, at their core, contracts." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 527 (Tenn. 2012) (Koch, J., dissenting). As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). Thus, the terms of an insurance policy "'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Clark*, 368 S.W.3d at 441 (quoting *U.S. Bank*, 277 S.W.3d at 386-87). The policy should be construed "as a whole in a reasonable and logical manner," *Standard Fire Ins. Co. v. Chester–O'Donley & Assocs.*, 972 S.W.2d 1, 7(Tenn. Ct. App. 1998), and the language in dispute should be examined in the context of the entire agreement, *Cocke Cty Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985).

> In addition, contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls.  *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *VanBebber v. Roach*, 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007). However, a "strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

*Id.* at 663-64.

Although the issue of whether arson falls within an exclusion for vandalism or malicious mischief is an issue of first impression in Tennessee, there has been no shortage of litigation in other jurisdictions with respect to this very issue.  Many courts have held that an exclusion for vandalism and/or malicious mischief clearly does not encompass arson, particularly where the policy at issue distinguishes between fire and vandalism and/or malicious mischief.  *See, e.g., R & J Dev. Co. v. Travelers Property*

*Cas. Co. of Am.*, No. 11-47-ART, 2012 WL 1598088, at *2 (E.D. Ky. May 7, 2012) ("the term 'vandalism' unambiguously excludes arson"); *Bates v. Hartford Ins. Co. of Midwest*, 787 F.Supp.2d 657, 663 (E.D. Mich. 2011) ("the policy, when considered as a whole, is not ambiguous: Arson is not included within the vandalism and malicious mischief class of perils"); *Johnson v. State Farm Fire & Cas. Co.*, No. 278267, 2008 WL 4724322, at *4 (Mich. Ct. App. Oct. 28, 2008) ("Viewing the policy as a whole, we conclude that it is not ambiguous, and that fire and vandalism are considered to be two different perils."); *Tillman v. S. State Ins. Co.*, 325 S.E.2d 585, 585 (S.C. Ct. App. 1985) (applying the plain and ordinary meaning of the terms to conclude that a deliberately set fire was not excluded as vandalism or malicious mischief); *Am. States Ins. Co. v. Rancho San Marcos Props., LLC*, 97 P.3d 775, 779 (Wash. Ct. App. 2004) ("the question (at least in Washington) is whether the average person purchasing insurance would believe that he or she assumed the risk of an arson fire under an all-risk policy where the policy excluded coverage for vandalism. . . . The answer to that question is 'no.'") (citation omitted); *Dixon v. Safeco Ins. Co. of Am.*, No. 27763-8-II, 2002 WL 31002848, at *3 (Wash. Ct. App. 2002) ("Where a homeowner's insurance policy treats 'fire' and 'vandalism and malicious mischief' as two distinct causes of loss and the terms are not defined, an average person would conclude that arson falls under the category of fire rather than vandalism and malicious mischief."). Trial courts in Shelby County and Scott County have reached the same conclusion.

Other courts have found ambiguity in the terms "vandalism" and "malicious mischief" and construed the language in favor of coverage, holding that arson does not fall within the exclusion. *See, e.g.*, *Bales v. Allstate Ins. Co.*, No. 10-CV-2605-H (CAB), 2011 WL 9133647, at *4 (S.D. Cal. 2011) ("the vandalism or malicious mischief exclusion in the Policy does not exclude coverage for arson fire in clear and conspicuous language"); *Bellington Realty v. Philadelphia Ins. Co.*, No. 10 C 7224, 2013 WL 2403620, at *4 (N.D. Ill. May 31, 2013) (finding the policy ambiguous as to which peril covers arson – fire or vandalism – and concluding that arson should fall under the umbrella of fire as opposed to vandalism in order to provide coverage); *United Capital Corp. v. Travelers Indem. Co. of Illinois*, 237 F.Supp.2d 270, 274 (E.D. N.Y. 2002) ("under the specific wording and format of the Policy, the Court finds that the Policy is at least ambiguous as to whether 'Vandalism' in the Vacancy Exclusion includes arson"); *Leander Land & Livestock, Inc. v. Am. Economy Ins. Co.*, No. 6:11-cv-06426-AA, 2013 WL 1786348, at *9 (D. Or. Apr. 21, 2013) (finding the terms ambiguous and ultimately concluding that the term vandalism, as it was used in the policy, did not equate to an intentionally ignited fire); *Nationwide Mut. Fire Ins. Co. v. Nationwide Furniture, Inc.*, 932 F. Supp. 655, 657 (E.D. Pa. 1996) ("Because fire and vandalism are listed in the policy as separate causes of loss, we conclude that at best the word vandalism is ambiguous. It must be construed against the insurer so as not to encompass damage

involving a fire."); *Fort Lane Village, L.L.C. v. Travelers Indem. Co. of Am.*, 805 F.Supp.2d 1236, 1240-1241 (D. Utah 2011) (finding the term vandalism ambiguous as to whether it would encompass arson where the policy separately listed fire and vandalism as specific covered losses); *Cipriano v. Patrons Mut. Ins. Co. of Connecticut*, No. 4100708, 2005 WL 3665306, at \*6 (Conn. Super. Ct. 2005) ("Construing the insurance policy as a whole, as the court must, it is apparent that ambiguity arises as to whether the term 'vandalism' includes the act of intentionally setting a fire for incendiary purposes."); *Mutual Fire Ins. Co. of Calvert County v. Ackerman,* 872 A.2d 110, 117 (Md. Ct. Spec. App. 2005) ("a reasonably prudent layperson could consider arson to be separate from, and not included in, the term vandalism") (quotation omitted); *MDW Enterps., Inc. v. CNA Ins. Co.*, 772 N.Y.S.2d 79, 82 (N.Y. App. Div. 2004) ("Reading the subject policy as a whole, we conclude that the term 'vandalism' in this policy is ambiguous, and thus, must be construed in favor of the insured."). *See also Brinker v. Guiffrida*, 629 F.Supp. 130, 136 (E.D. Pa. 1985) (concluding that a federal crime insurance policy expressly providing coverage for vandalism and malicious mischief would also provide coverage for arson, noting that an ambiguous policy should be construed in favor of coverage).

Still other courts have found that arson does fall within the plain and ordinary meaning of an exclusion for vandalism and/or malicious mischief. *See, e.g.*, *Am. Mut. Fire Ins. Co. v. Durrence,* 872 F.2d 378, 379 (11th Cir. (Ga.) 1989) ("a common sense interpretation of the insurance contract's 'Vandalism or Malicious Mischief' provision . . . suggests that it would apply to a fire set in a vacant house by an unknown arsonist or vandal"); *Estes v. St. Paul Fire and Marine Ins. Co.*, 45 F.Supp.2d 1227, 1229 (D. Kan. 1999) ("Arson of a private dwelling clearly is within the plain and ordinary meaning of vandalism."); *Potomac Ins. Co. of Illinois v. NCUA a/k/a Nat. Credit Union Ass'n*, No. 96 C 1044, 1996 WL 396100, at \*4 (N.D. Ill. July 12, 1996) (considering dictionary definitions to conclude that "arson does indeed fall within the definition of vandalism"); *Botee v. S. Fidelity Ins. Co.*, No. 5D13-3235, 2015 WL 477836, at \*4 (Fla. Dist. Ct. App. Feb. 6, 2015) ("the plain and ordinary meanings of 'vandalism' and 'malicious mischief' include 'arson'"); *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1114 (N.M. 2006) (relying solely on dictionary definitions to conclude that arson is a form of "vandalism and malicious mischief"); *Bear River Mut. Ins. Co. v. Williams*, 153 P.3d 798, 800 (Utah Ct. App. 2006) ("arson is a type of vandalism or malicious mischief, and [] the policy unambiguously excludes coverage for arson losses"); *see also Costabile v. Metro. Prop. and Cas. Ins. Co.*, 193 F.Supp.2d 465, 476-78 (D. Conn. 2002) (concluding that the vandalism and malicious mischief exclusion under Coverage A is clear and unambiguous and does encompass arson, but separately analyzing Coverage C and finding it ambiguous as to whether vandalism would include incendiary fire for purposes of that section of the policy). A trial court in Knox County has also concluded that the ordinary meaning of vandalism would include arson.

In Tennessee, "[i]t is well settled that exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured." *Allstate Ins. Co. v. Watts,* 811 S.W.2d 883, 886 (Tenn. 1991) (citing *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 367 (Tenn. 1973)). We interpret an insurance contract "according to its plain terms as written, and the language used is taken in its 'plain, ordinary, and popular sense.'" *Maggart v. Almany Realtors, Inc.,* 259 S.W.3d 700, 704 (Tenn. 2008) (quoting *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth*, 521 S.W.2d 578, 580 (Tenn. 1975); *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002)). The "ordinary meaning" envisioned is "'the meaning which the average policy holder and insurer would attach to the policy language.'" *Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 216 (Tenn. Ct. App. 2013) (quoting *Swindler v. St. Paul Fire & Marine Ins. Co.*, 223 Tenn. 304, 307, 444 S.W.2d 147, 148 (Tenn. 1969)); *see also Harrell v. Minnesota Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996) (noting that "an insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy," and considering what "the average insured would understand"). The language of an insurance contract "must be read as a layman" would read it. *Paul v. Ins. Co. of N. Am.,* 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984) (citing *Harkavy v. Phoenix Ins. Co.*, 220 Tenn. 327, 337, 417 S.W.2d 542, 546 (1967)).

Applying these principles to the policy as a whole, it becomes clear that the vacancy exclusion for "vandalism and malicious mischief, theft or attempted theft" does not encompass arson. In the section of the policy entitled "Perils Insured Against," the policy clearly makes a distinction between "fire" and "vandalism or malicious mischief," listing these as separate perils. The average policy holder or layman would conclude that arson falls within the class of "fire." Thus, when the policy lists an exclusion for "vandalism and malicious mischief, theft or attempted theft" at a vacant dwelling, the average policy holder or layman would conclude that the policy provides coverage for fire and arson at a vacant dwelling. To equate arson with vandalism or malicious mischief would be contrary to the understanding of the average person purchasing a policy of insurance when the terms are undefined in the policy and listed as separate perils.

On appeal, Southern Trust asks us to consider and apply the dictionary definitions of vandalism and malicious mischief in order to determine whether arson qualifies as either. Southern Trust cites *Black's Law Dictionary*, which defines vandalism as:

1. Willful or ignorant destruction of public or private property, esp. of artistic, architectural, or literary treasures. 2. The actions or attitudes of one who maliciously or ignorantly destroys or disfigures public or private property; active hostility to anything that is venerable or beautiful.

*Black's Law Dictionary* (10th ed. 2014). It defines malicious mischief as: "The common-law misdemeanor of intentionally destroying or damaging another's property." *Id.* The terms vandalism and malicious mischief are broadly defined in Merriam-Webster's Collegiate Dictionary. The full definition of "vandalism" is the "willful or malicious destruction or defacement of public or private property." 1 June 2015. <http://www.merriam-webster.com/dictionary/vandalism>, (based on the print version of *Merriam-Webster's Collegiate Dictionary*, Eleventh Edition). The definition of "malicious mischief" is "willful, wanton, or reckless damage to or destruction of another's property." 1 June 2015. <http://www.merriam-webster.com/dictionary/ maliciousmischief>. Southern Trust claims that these dictionary definitions broadly define vandalism and malicious mischief as encompassing any type of intentional destruction of property, and, therefore, arson would meet these definitions.[2]

If we were reading these dictionary definitions of the terms vandalism, malicious mischief, and arson independently and in isolation, we could read them to mean that arson is one type of vandalism and malicious mischief. However, "we cannot read portions of a contract in isolation -- they must be read together to give meaning to the document as a whole." *Maggart*, 259 S.W.3d at 705 (citing *Davidson v. Davidson*, 916 S.W.2d 918, 922-23 (Tenn. Ct. App. 1995). "For readers attempting to discover the meaning of words syntactically strung together into phrases and sentences, '[e]verything hangs on context and purpose.'" *Burress v. Sanders*, 31 S.W.3d 259, 265 (Tenn. Ct. App. 2000) (quoting Bryan A. Garner, *The Elements of Legal Style* 7 (1991)). Our task is not simply to compare definitions from external sources and determine the meaning of these terms in the abstract.[3] "The entire written agreement must be considered." *Maggart*, 259

[2]*Black's Law Dictionary* (10th ed. 2014) defines "arson" as, "[a]t common law, the malicious burning of someone else's dwelling house or outhouse[.]" *Merriam-Webster's* defines "arson" as "the willful or malicious burning of property (as a building) especially with criminal or fraudulent intent." 1 June 2015. <http://www.merriam-webster.com/dictionary/arson>.

[3]Other courts have looked beyond dictionary definitions as well. In *MDW Enterprises, Inc.*, 772 N.Y.S.2d at 83, the New York appellate court concluded that the lower court erred in relying solely on dictionary definitions of vandalism and arson, stating that such an analysis "was overly narrow and ignored the policy as whole" while also overlooking the meaning of the terms to an ordinary business person. The Maryland Court of Appeals likewise concluded that "the search for meaning" of these terms should not end with the very broad definition of vandalism afforded by dictionaries. *Ackerman*, 872 A.2d at 116 (quotation omitted). The Washington Court of Appeals observed that dictionary definitions were simply "not helpful here." *American States Ins. Co.*, 123 Wash. App. at 211. In *R & J Development Co.,*

S.W.3d at 704 (citing *D. & E. Const. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 518-19 (Tenn. 2001)).

A review of the structure and language of the insurance policy in this case leads us to conclude that the parties did not have such a broad understanding with respect to the meaning of vandalism and malicious mischief. First of all, we recognize that in common speech, vandalism and arson are separate and distinct activities. *Ackerman*, 872 A.2d 116-17 (Md. Ct. App. 2005) ("Quite apart from the dictionary, there exists a sense that the common and ordinary meaning of vandalism is something different than that of arson.") (quotation omitted); *Johnson*, 2008 WL 4724322, at *3 (Mich. Ct. App. Oct. 28, 2008) ("in common speech vandalism and arson are separate, distinct activities") (quotation omitted); *MDW Enterprises, Inc.*, 772 N.Y.S.2d at 83 (N.Y. App. Div. 2004) ("ordinary business people generally view 'vandalism' and 'arson' as distinct perils"); *see also Cipriano*, 2005 WL 3665306, at *6 (Conn. Super. Ct. Dec. 23, 2005) (same). Policy language should be given "the natural and ordinary meaning commonly ascribed to it in everyday use unless by some known usage the terms employed have acquired a meaning different from their popular sense." *Monroe County Motor Co. v. Tennessee Odin Ins. Co.,* 231 S.W.2d 386, 395 (Tenn. Ct. App. 1950). As the trial court noted, Tennessee's criminal statutes also distinguish between vandalism and arson, defining each as a separate and distinct offense. *See* Tenn. Code Ann. § 39-14-408 (defining the offense of vandalism); § 39-14-301 (defining the offense of arson).[4]

Perhaps more importantly, however, the insurance policy itself consistently makes a distinction between fire, on the one hand, and vandalism and malicious mischief, on the other. *See Leander Land & Livestock, Inc.*, 2013 WL 1786348, at *9 (D. Or. 2013) ("regardless of the breadth of definitions found elsewhere, the structure and language of the Policy indicates that the terms 'fire,' 'vandalism,' and 'arson' have independent meanings"). As explained above, the policy lists fire and vandalism and/or malicious mischief as separate "Perils Insured Against." The vacancy exclusion only excludes

*LLC,* 2012 WL 1598088, at *4, the United States District Court for the Eastern District of Kentucky provided the following comparison when explaining its decision to look beyond the definitions found in dictionaries:

> If the language and structure of a contract indicates that the term "color" does not include black (technically the absence of all color), then the Court could not override the parties' agreement with an external definition that includes black as a color.

[4]Southern Trust argues in its reply brief that the trial court erred in considering the definitions found in Tennessee's criminal statutes. However, Southern Trust relied on the criminal statutes in its memorandum in support of its motion for summary judgment, and it continues to cite the criminal statutes in its brief on appeal. The trial court did not err in considering these statutes.

"vandalism or malicious mischief, theft or attempted theft." Therefore, the average policy holder would conclude that fire (and arson) is covered, while vandalism of a vacant dwelling is not.

Another aspect of this policy also leads us to conclude that the parties were using a narrower definition of vandalism and malicious mischief than the dictionary definitions quoted above. The vacancy exclusion provided that Southern Trust did not cover loss caused by "vandalism and malicious mischief, theft or attempted theft." If vandalism and malicious mischief were intended to be read broadly to encompass all property damage resulting from a deliberate act, the additional exclusion for damage caused by "theft or attempted theft" would be superfluous. "If 'vandalism' means 'any intentional property damage' and the medium of destruction is irrelevant, then there is no need to include damage to 'theft' or 'attempted theft' in the vacancy exclusion." *R & J Dev. Co.,* 2012 WL 1598088, at *4. The *R & J* court provided the following illustration:

> For instance, suppose that an individual breaks into a vacant property and steals a refrigerator. The process of dragging the refrigerator out to his waiting getaway truck rips the kitchen linoleum apart. Applying [the insurer's] approach here, the medium—theft—is irrelevant because the end result is the same—the intentional destruction of property, or "vandalism." Yet Kentucky courts have not adopted this approach in the context of interpreting "theft." *See Reynolds v. Travelers Indem. Co. of Am.*, 233 S.W.3d 197, 201 (Ky. App. 2007) ("While the home had been vacant for more than 30 consecutive days, the loss was clearly not caused by vandalism or malicious mischief as those terms are commonly understood. Instead, the [insureds'] loss in this case was plainly caused by the theft of the refrigerator."); *see also SR Int'l Bus. Ins. Co.,* [*v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 139 (2nd Cir. (N.Y.) 2006)] (refusing to interpret "vandalism and malicious mischief" to include terrorism even though terrorism involves intentional property damage).

*Id*. We find this reasoning persuasive and equally applicable under Tennessee law. In *Smith v. Shelby Ins. Co. of Shelby Ins. Group,* 936 S.W.2d 261, 265 (Tenn. Ct. App. 1996), this Court was asked to decide whether an insured's loss caused by thieves removing copper wire resulted from vandalism, a covered event, or damage caused by theft, which was an excluded loss. Considering the fact that the two terms were listed separately in the policy, the court concluded that theft was not included "within the general concept of vandalism." *Id.* The court further noted that the concept of vandalism is "entirely different" than the concept of theft, as those terms are ordinarily understood.

*Id.* The policy issued to Phillips excludes "vandalism and malicious mischief, theft or attempted theft" at a vacant dwelling, suggesting that vandalism and malicious mischief should not be read as broadly as Southern Trust now contends. Our "interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." *Maggart*, 259 S.W.3d at 704.

We also reject Southern Trust's argument that we should limit our consideration to the section of the policy addressing dwelling coverage under Coverage A and ignore the sections, on the very same page, addressing other types of coverage. We recognize that other courts have found this type of isolated interpretation appropriate. *See, e.g.*, *Botee*, 2015 WL 477836, at *4 (D. Fla. Ct. App. 2015) ("As the loss in the instant case was only to the structure and not to any personal property, it is only necessary to read Coverage A and the general conditions and definitions applicable to the entire Policy[.]"); *Battishill*, 139 N.M. at 28 (finding it unnecessary to read the coverages together because the court concluded that the exclusion read alone was clear and unambiguous); *see also Costabile*, 193 F.Supp.2d at 467-478 (D. Conn. 2002) (reaching separate conclusions for each section, finding Coverages A and B unambiguous but Coverage C ambiguous). However, in Tennessee, courts must consider "[t]he entire written agreement." *Maggart*, 259 S.W.3d at 704.

> "In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts. It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another."

*Id.* (quoting *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)). "When interpreting a contract of insurance, the terms of the policy are read in the context of the whole policy." *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006)(citations omitted). We decline to read the vacancy exclusion in Coverage A in isolation. *See, e.g.*, *Holt v. Pyles*, Nos. M2005-02092-COA-R3-CV, M2005-02094-COA-R3-CV, 2007 WL 1217264, at *5 (Tenn. Ct. App. Apr. 24, 2007) ("the insured cannot simply focus on the declarations/summary portion of a contract in isolation; the policy must be read as a whole").

In summary, we hold that the policy issued to Phillips unambiguously provides coverage for fire and/or arson but does not cover vandalism or malicious mischief at a

vacant dwelling. If Southern Trust desired the result to be otherwise, as the drafter of the policy, it could have clearly distinguished between damage from accidental fires and damage from intentionally set fires. Alternatively, it could have included a specific definition of vandalism and malicious mischief or expressly added fire or arson to the vacancy exclusion alongside vandalism, malicious mischief, theft, or attempted theft.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Southern Trust Insurance Company, and its surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE