IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2016 Session

## TENNESSEE FARMERS MUTUAL INSURANCE COMPANY v. ESTATE OF RICHARD M. ARCHIE AND JESSICA COSSITT

**Appeal from the Circuit Court for Shelby County
No. CT-002164-14  Rhynette N. Hurd, Judge**

_____

### No. W2016-01287-COA-R3-CV

_____

This appeal involves a dispute regarding a household exclusion clause in an automobile insurance policy.  Following a motorcycle accident in which the defendant was injured while riding as a passenger of the insured, the insurance company filed suit seeking a declaratory judgment that the exclusion relieved it of liability for the defendant's claims because the defendant was _residing_ in the insured's household at the time of the accident.  Following a bench trial, the trial court found that the defendant was not residing in the insured's household at the time of the accident for purposes of determining liability coverage and denied the insurance company's request for declaratory relief.  The insurance company appealed.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right: Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG, J., and DAVID R. FARMER, SP. J., joined.

Andrew H. Owens and Ashleigh C. Kiss, Memphis, Tennessee, for the appellant, Tennessee Farmers Mutual Insurance Company.

Matthew Porter, Memphis, Tennessee, for the appellee, Jessica Cossitt.

Dawn Davis Carson and Jason R. Hollingsworth, Memphis, Tennessee, for the appellee, State Farm Mutual Automobile Insurance Company.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

On December 20, 2013, Jessica Cossitt and Richard Archie were involved in a single vehicle accident when a motorcycle owned and operated by Mr. Archie, on which Ms. Cossitt was a passenger, hit a pothole and veered out of control. Mr. Archie died as a result of his injuries; Ms. Cossitt survived but sustained serious personal injuries. At the time of the accident, Mr. Archie had an automobile insurance policy with Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"). The policy contained the following household exclusion clause: "We do not provide coverage . . . for any person or entity for *bodily injury* or *property damage* to any *covered person* or any person residing in the *covered person's* household."

In May 2014, Tennessee Farmers filed a complaint for declaratory judgment in the Shelby County Circuit Court against Ms. Cossitt and Mr. Archie's estate. Tennessee Farmers asserted that the household exclusion clause in Mr. Archie's insurance policy applied to Ms. Cossitt's injuries because she was residing in Mr. Archie's household at the time of the accident. It requested the entry of an order declaring that it had no obligation to defend or pay claims filed by Ms. Cossitt against Mr. Archie's estate arising from the accident.[1] Ms. Cossitt responded, asserting that the exclusion did not apply because she was not residing in Mr. Archie's household at the time of the accident.[2] The case proceeded to a bench trial in May 2016.

The facts established at trial are largely undisputed. In 2005, Ms. Cossitt was living in a house that she rented from her mother for $600 per month. Around that time, she met Mr. Archie while working as a waitress in a restaurant that he frequented. Although their relationship was never romantic, the two became close friends. In 2011, Mr. Archie also moved into the house that Ms. Cossitt was renting from her mother. He lived there for approximately six months and paid Ms. Cossitt's mother $200 per month in rent. In mid-2012, Mr. Archie moved out and began renting a two-story, three-bedroom house on Ivawood Drive in Bartlett, Tennessee. Shortly thereafter, Ms. Cossitt's mother decided to sell the house she had been renting to her daughter. As a

---

[1] In December 2014, Ms. Cossitt filed a separate lawsuit against Mr. Archie's estate claiming personal injuries and damages caused by Mr. Archie's negligence.

[2] The trial court granted the motion of Ms. Cossitt's insurance carrier, State Farm Mutual Automobile Insurance Company ("State Farm"), to intervene as a defendant.

result, Ms. Cossitt moved into a room at the house of another friend. Ms. Cossitt testified that she planned to live with the friend temporarily until she found a better place. She did not pay rent and put the majority of her furniture in storage. Despite having a room at the friend's house, she spent most nights at her boyfriend's house because it was closer to the restaurant where she worked. This arrangement lasted for only a few months, however, as Ms. Cossitt's friend subsequently needed the room for a family member. Although she had been staying at her boyfriend's house most nights, Ms. Cossitt testified that she was not ready to move in with him at the time. When Mr. Archie offered to let her rent an extra bedroom at the house he was renting, she accepted.

In January 2013, Ms. Cossitt moved into the house that Mr. Archie was renting on Ivawood Drive. Ms. Cossitt testified that she only planned to live at Mr. Archie's house temporarily until she was financially stable. Apart from a bed, she did not bring any of her furniture to the house. She paid Mr. Archie $200 per month in rent. She had her own bedroom on the second floor and unlimited access to all common areas of the house. Although she listed the Ivawood Drive address on her driver's license, she did not receive her mail there. She did not share personal expenses with Mr. Archie and continued to spend most nights at her boyfriend's house. Ms. Cossitt testified that she had been looking for another place to live at the time of the accident but had not yet found one.

The trial court announced its findings from the bench after the close of proof:

> Now, Ms. Cossitt lived at this address, but it appears to the Court that she was not, as contemplated by Tennessee law in the language of the policy, residing in the insured's household.

> Ms. Cossitt rented a room at the insured's house. She resided at the house, but she was not part of the household. She was not a member of any group. There was no intimacy between her and the insured.

> There was no family-like relationship. She testified they didn't watch television together. She could come and go as she pleased without letting Mr. Archie know she was coming or going. She had access independently with her own key.

> The fact that she has repeatedly said this was her address, it was just a place she was living at the time. It doesn't mean necessarily that she was a member of the household, which I think is the important language. Not whether she was residing there, she was living there.

The question was, was she residing as a member of the household. They rarely engaged in activities together.

The fact that she paid only two hundred dollars in rent is reasonable, this was what she could afford at the time, and it was a temporary residence. She had one small room, although she had access to the rest of the house. It makes sense, and the rent is reasonable in light of the circumstances.

It's clear also to the Court that she was going to stay only so long as she had to before she could find a place of her own. She testified she was looking for somewhere else to live.

She was independent and able to come and go as she pleased, and as such, I do find Tennessee Farmers owes a duty to cover her, or to cover Mr. Archie under the policy.

The trial court's oral findings were incorporated by reference into its final order denying the request for declaratory judgment. Tennessee Farmers timely filed a notice of appeal to this Court.

## ISSUE

Tennessee Farmers raises the following issue on appeal, restated from its appellate brief:

1. Whether the trial court erred in ruling that Ms. Cossitt was not residing in Mr. Archie's household so as to invoke the insurance policy's household exclusion clause.

## STANDARD OF REVIEW

The issue presented on appeal requires us to ascertain the meaning of a household exclusion clause in an insurance policy. At their core, insurance policies are contracts. *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 527 (Tenn. 2012) (Koch, J., dissenting). A question regarding the scope of insurance coverage is an issue of law involving the interpretation of contractual language. *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012). As such, our standard of review is de novo with no presumption of correctness afforded to the trial court's conclusion. *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009).

**DISCUSSION**

Parties to an insurance contract are free to contract as they see fit so long as they remain within the bounds of the law and public policy. *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d 950, 953 (Tenn. Ct. App. 1996). In that vein, the court should construe insurance policies using the same principles that guide the construction of any other contract. *Garrison*, 377 S.W.3d at 664. Accordingly, the court's primary goal is to ascertain and give effect to the parties' intent. *Id.* To that end, the court should look first to the plain language of the policy and give the words used their usual and ordinary meaning. *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 41-42 (Tenn. 2014). Importantly, the "ordinary meaning" contemplated is "the meaning which the average policy holder and insurer would attach to the policy language." *S. Trust Ins. Co. v. Phillips*, 474 S.W.3d 660, 667 (Tenn. Ct. App. 2015). More precisely, "[t]he language of an insurance contract 'must be read as a layman' would read it." *Id.* (quoting *Paul v. Ins. Co. of N. Am.*, 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984)); *see also Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996) ("[A]n insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy."). If the provisions of the policy are clear and unambiguous, the court should avoid favoring either party or construing the policy in a manner that would artificially restrict or extend the scope of coverage. *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 20 (Tenn. Ct. App. 2002).

In determining the scope of coverage under a liability insurance policy, the court should start by considering the insuring agreement. *Id.* at 20. The insuring agreement sets forth the outer limits of what the insurance company will cover under the policy. *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001). The exclusions then "help define the shape and scope of coverage" by excluding coverage in certain circumstances. *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007) (quoting *Standard Fire Ins. Co. v. Chester-O'Donely & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998)).

The insuring agreement in Mr. Archie's automobile insurance policy appears under the heading "What is Covered." In part, that section provides that Tennessee Farmers "will pay compensatory damages . . . for *bodily injury* and *property damage* for which any *covered person* becomes legally liable to pay because of an automobile accident[.]" It also provides that Tennessee Farmers will "defend with attorneys hired and paid by us, any claim or suit seeking damages against a *covered person* for which coverage is provided." The exclusions in Mr. Archie's automobile insurance policy appear under the heading "What is Not Covered." In part, that section provides that Tennessee Farmers does not provide liability coverage for "*bodily injury* or *property*

*damage* to . . . any person residing in the *covered person's* household." There is no dispute that Mr. Archie was the "covered person" under the policy. The only question is whether Ms. Cossitt was residing in his household at the time of the accident. If she was, then the foregoing household exclusion clause applies and Tennessee Farmers is not obligated to pay or defend her claims against Mr. Archie's estate.

Household exclusion clauses similar to the one in Mr. Archie's automobile insurance policy appear often in insurance contracts. *See Nat'l Ins. Ass'n v. Simpson*, 155 S.W.3d 134, 138 (Tenn. Ct. App. 2004). Their purpose is to safeguard the insurance company against collusion by relieving it from the obligation to cover claims filed by persons to whom the insured, on account of close family ties, would be naturally partial in case of injury. *See Dressler v. State Farm Mut. Ins. Co.*, 376 S.W.2d 700, 702 (Tenn. Ct. App. 1963); 8 Steven Plitt et al., *Couch on Insurance* § 114:26 (3d ed. 2000). Tennessee courts have consistently held that such exclusions are valid and not contrary to public policy. *Purkey v. Am. Home Assurance Co.*, 173 S.W.3d 703, 709 (Tenn. 2005); *Dockins v. Balboa Ins. Co.*, 764 S.W.2d 529, 530 (Tenn. 1989); *Holt v. State Farm Mut. Ins. Co.*, 486 S.W.2d 734, 735 (Tenn. 1972). Additionally, Tennessee courts have determined that household exclusion clauses similar to the one at issue in this case are not ambiguous. *VanBebber v. Roach*, 252 S.W.3d 279, 287 (Tenn. Ct. App. 2007) (holding that the phrase "resident of your household" is not ambiguous); *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 914 (Tenn. Ct. App. 1994) (holding that the phrase "residing in your household" is not ambiguous). To the extent that such clauses are not defined in the insurance policy, the courts have held that the definition is supplied by case law. *Gredig*, 891 S.W.2d at 909. Nevertheless, they have recognized that the legal meaning of such clauses must be viewed flexibly given the numerous factual settings to which they may apply. *Simpson*, 155 S.W.3d at 139; *see also Gredig*, 891 S.W.2d at 914-15 ("[T]he fact that the words may be difficult to apply to a given factual situation does not make those words ambiguous.").

In *Simpson*, this Court outlined the historical understanding of residence in a household as reflected in case law:

> Residence in a household contemplates both a relationship to a place and membership in a group. It includes the common types of close relationships, varying greatly in detail, where persons live together as a family in a closely knit group, usually because of close relationship by blood, marriage, or adoption, and deal with each other intimately, informally, and not at arm's length.

> Earlier definitions of "household" limited its application to groups of persons living together "under one head." However, the legal significance

- 6 -

of *paterfamilias* has given way in modern times to a broader concept of family. The courts cannot force people to live in narrowly defined family patterns. We now recognize that "[o]ut of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and satisfactions of a common home." Thus, the prevailing understanding of "household" today does not necessarily require the existence of a family head. For the purposes of this opinion, we, like a majority of jurisdictions, recognize a household as a group or set of persons who dwell together as a family under the same roof.

Residence in a household also requires a degree of permanence and intention to remain in the household for an indefinite period of time. It connotes a settled or permanent status. Thus, a temporary visit by a relative does not make the relative a resident of the household because it is temporary and there is no melding of the family unit. Likewise, a landlord-tenant relationship or a simple roommate arrangement does not create a household.

*Simpson*, 155 S.W.3d at 139 (internal citations and footnotes omitted). Additionally, we discussed five non-exclusive factors to consider in determining whether an individual is a resident of a household:

(1) the person's subjective or declared intent to remain in the household either permanently or for an indefinite or unlimited period of time, (2) the formality or informality of the relationship between the person and the other members of the household, (3) whether the place where the person lives is in the same house or on the same premises, (4) whether the person asserting residence in the household has another place of lodging, and (5) the age and self-sufficiency of the person alleged to be a resident of the household.

*Id*. at 139-140 (citations omitted).

In its brief, Tennessee Farmers asserts that Ms. Cossitt's statement that she planned to live with Mr. Archie until she was "more financially stable" is indicative of her intent to continue living in his house indefinitely. As the evidence clearly demonstrates, however, both Ms. Cossitt and Mr. Archie understood the arrangement to be temporary. Ms. Cossitt only moved in with Mr. Archie after her two prior living arrangements became unavailable. Although Ms. Cossitt listed the Ivawood Drive address on her driver's license, she did not receive her mail there. Apart from a bed, Ms. Cossitt kept her furniture in storage while living with Mr. Archie. The two were not

related, and their relationship was not intimate. Although they were close friends, there is no evidence of any other relationship between them. Each had their own bedroom, paid their own personal expenses, and lived independently of the other with the exception of their shared house and social activities. Neither party had any supervisory or disciplinary responsibility for the other. Ms. Cossitt was not in any way under Mr. Archie's control and was free to move out at any time. Perhaps most notably, Ms. Cossitt paid Mr. Archie $200 per month in rent. Although Tennessee Farmers suggests that this rental rate fell below the fair market value, the arrangement was economically beneficial to both parties. Ms. Cossitt received a suitable place to live that allowed her to save money, and Mr. Archie received extra money each month for allowing an individual that he knew and trusted to use an otherwise unused bedroom.

In light of these facts, it is clear that Ms. Cossitt and Mr. Archie lived together as a matter of economic expediency and not in any sense as a family. Although they physically occupied the same house at the time of the accident, there is no evidence to indicate that they intended to form a social unit beyond that of a landlord-tenant or simple roommate arrangement. As such, we conclude that the trial court did not err in finding that Ms. Cossitt was not residing in Mr. Archie's household at the time of the accident and that the household exclusion clause does not relieve Tennessee Farmers of its obligation to defend or pay claims filed by Ms. Cossitt against Mr. Archie's estate.

## CONCLUSION

In light of the foregoing, we affirm the judgment of the trial court denying Tennessee Farmers' request for declaratory judgment. Costs of this appeal are taxed to the appellant, Tennessee Farmers, and its surety, for which execution may issue.

_____
ARNOLD B. GOLDIN, JUDGE